JOHN F. SEVERSON, as Commissioner of Charities of the City of Binghamton, Respondent, *v.* HENRY M. MACOMBER, Appellant.

*Disorderly persons — failure to support wife and children — undertaking for the support thereof — action against surety on such undertaking — evidence — insufficient defenses.*

1. Where one, held as a disorderly person under the statute (Code Crim. Pro. § 899) for failing to support his wife and children, was required by the magistrate, in accordance with the statute (Code Crim. Pro. § 901, subd. 1, as amd. by L. 1909, ch. 506), to give an undertaking to secure the payment of a designated sum weekly for the space of one year, for the support of his family, and an action was thereafter brought against the surety upon such undertaking, it was not necessary to prove that the family of such disorderly

person had become a public charge. The undertaking was not one of indemnity to protect the public treasury, and under the statute (Code Crim. Pro. § 904, as amd. by L. 1909, ch. 506) such an undertaking is forfeited by the failure of the disorderly person to make the weekly payments as ordered by the magistrate. (*Goetting* v. *Normoyle,* 191 N. Y. 368, distinguished.)

2. The judgment convicting the disorderly person, because he failed to support his family, necessarily established that he was liable and able to support them at the time the judgment was rendered, and the surety on the undertaking cannot, in the action thereon, question the force of such judgment or dispute the recitals in, and consideration for, the undertaking which he executed.

3. Where the obligations of the undertaking were not conditioned on the disorderly person's ability to work and personally earn the money which he was required to pay for the support of his family, his liability for their support did not cease, even if he became insane, and the liability to pay a weekly sum for their support could be enforced against his estate even though he was personally incapacitated, but this question cannot be considered in the absence of evidence that he became insane after the undertaking was executed and within the year covered thereby, and where there is no evidence that he possessed no means from which could be made the payments which he was ordered to make, and payment of which the surety on the undertaking in effect guaranteed.

*Severson* v. *Macomber,* 153 App. Div. 482, affirmed.

(Submitted May 8, 1914; decided July 14, 1914.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered December 4, 1912, which reversed an order of the Broome County Court setting aside a verdict theretofore directed by the court in favor of plaintiff and granting a new trial, and directed judgment for the plaintiff.

The facts, so far as material, are stated in the opinion.

*Thomas B. Kattell* for appellant. The judgment and order should be reversed and the complaint dismissed because upon the admitted facts plaintiff has no cause of action. (*Goetting* v. *Normoyle,* 119 App. Div. 143; 191 N. Y. 368; *Mayor, etc.,* v. *M. R. Co.,* 143 N. Y. 38;

*Duryee* v. *Mayor, etc.,* 96 N. Y. 495.) The evidence admitted and subsequently stricken out was amply sufficient to warrant a finding that the failure of Lathrop to make the payments and the alleged forfeiture were caused by an act of God which constituted a complete defense herein. (*People* v. *Bartlett,* 3 Hill, 570; *People* v. *Martin,* 143 N. Y. 407; *People* v. *Tubbs,* 37 N. Y. 586; *Matter of Elder* v. *Bingham,* 118 App. Div. 25; 189 N. Y. 509; *People, etc.,* v. *Police Commissioners,* 114 N. Y. 248; *People* v. *Manning,* 8 Cow. 297; *Wolf* v. *House,* 20 N. Y. 197; *Matter of James,* 18 Fed. Rep. 853.)

*Rollin W. Meeker* and *Laverne M. Twining* for respondent. The condition of the undertaking having been breached, a cause of action arose against the surety under the statute. (*People* v. *Pettit,* 74 N. Y. 320; *Drummond* v. *McGarry,* 72 Misc. Rep. 341; *Hebberd* v. *Levin,* 68 Misc. Rep. 311.) Conceding that Lathrop became insane several months after the giving of the undertaking, he would still have been liable for the actual necessities furnished his family. (*Stuckey* v. *Mathes,* 24 Hun, 461; *Matter of Wing,* 2 Hun, 671.) The exclusion of the evidence as to Lathrop's subsequent insanity was correct. (*Gates* v. *Tebbetts,* 83 Neb. 573; *Lennon* v. *Grauer,* 159 N. Y. 433.)

HISCOCK, J. In November, 1909, in the city of Binghamton one Lathrop was arrested upon and pleaded guilty to a charge of being a disorderly person under the terms of section 899 of the Code of Criminal Procedure, which defined as disorderly persons, amongst others, those "who actually abandon their wives or children, without adequate support, or leave them in danger of becoming a burden upon the public, or who neglect to provide for them according to their means." Thereafter, in accordance with the provisions of section 901 of said Code, the city judge required said Lathrop to execute an undertaking with a

surety in the penalty of $400 on the condition, "If the above-named Irving Lathrop shall pay to said Broome County Humane Society the sum of Six ($6.00) Dollars weekly for the space of one year next ensuing, for the support of his wife and children, as has been ordered by the said Special City Judge & Acting as City Judge, then this obligation to be void, otherwise to remain in full force and virtue." This undertaking was executed by the appellant as surety.

For a while Lathrop made weekly payments as provided by said undertaking and then ceased. Thereafter this action was brought against the appellant as such surety as aforesaid to recover on his undertaking by reason of the failure of Lathrop to make payments. At the close of the trial in County Court the judge directed a verdict for the sum of four hundred dollars specified as the penalty in the undertaking and afterward made an order setting aside the verdict. The Appellate Division reversed this order and in effect reduced the recovery to an amount equal to the aggregate of the weekly payments which were due and unpaid at the time when the action was commenced, and as thus modified affirmed the recovery.

I regard it as necessary to consider only two of the defenses in respect of which the appellant claims to have been injured by erroneous rulings.

No evidence was offered by the respondent tending to show that Lathrop's wife or children had become a public charge after the execution of the undertaking, and it is insisted that in the absence of such evidence it did not appear that any damage had resulted from his failure to make the payments specified in the obligation and that, therefore, there could be no recovery. This contention is based on the theory that the undertaking was one of indemnity to protect the public treasury. The other defense is predicated on certain evidence which it is claimed tended to establish that Lathrop had become

insane after the undertaking was executed, it being asserted that this condition, if established, relieved him from making the payments specified in the undertaking and exonerated the appellant as his surety.

The first contention, that it was necessary for the respondent to show that Lathrop's family had become a public charge after the execution of the undertaking in order to be entitled to recover, is almost wholly rested on the decision of this court in *Goetting* v. *Normoyle* (191 N. Y. 368). That case was brought by the commissioner of public charities of the city of New York to recover on an undertaking executed on conviction of one who was a disorderly person because of failure to support his family in accordance with sections 685, 686 and 687 of the charter of the city of New York (Chapter 466 of the Laws of 1901). Section 685 at that time provided that any person "who actually abandons his wife or children without adequate support, or leaves them in danger of becoming a burden upon the public, or who neglects to provide for them according to his means * * * may be arrested * * * as provided by section nine hundred of the code of criminal procedure. And if thereupon it shall appear by the confession of the defendant or by competent testimony that he is guilty of the charge, the said magistrate shall make an order specifying a reasonable sum of money to be paid weekly for the space of one year thereafter by such defendant to the commissioner of public charities for the support of the wife or children." Section 686 provided, "Any person convicted of any of the offenses hereinbefore (in section 685) recited shall, upon being served with such order, enter into a bond * * * that such person will pay weekly for the space of one year such sum for the support of the wife or children or either or any of them, as has been ordered as aforesaid, to the commissioner of public charities." Section 687 provided for a suit on such bond on default and that "all moneys recovered in any suit, action or proceeding shall be paid to the com-

missioner to be by him applied and expended for the support of the wife and children, or either or any of them."
It was held in an action brought on an undertaking given under these sections that the undertaking was one of indemnity and to secure the support of the wife and children in order that they might not become a public charge and that a breach of such undertaking could not be established without proof, in addition to the other necessary facts, that the support of the wife and children had in fact been a charge on the public treasury through failure of the disorderly person to comply with the provisions of his undertaking.

In the course of his opinion Judge GRAY compared the provisions of the charter of New York city on which that action rested with sections 899 and 901 of the Code of Criminal Procedure, and what he wrote necessarily involved the conclusion that an undertaking given by a disorderly person like Lathrop under said latter sections as they then were was one of indemnity, and that, therefore, before a recovery could be had for breach of an undertaking it would be necessary to establish that the support of the delinquent's family had become a charge upon the public treasury.

At the time this interpretation was placed upon these provisions subdivision 1 of section 899 defining disorderly persons of the class to which Lathrop belonged read as it does at present.  Subdivision 1 of section 901 providing for the execution of an undertaking by a disorderly person provided that it should be conditioned "that he will support his wife and children, and will *indemnify* the county, city, village or town, against their becoming within one year, chargeable upon the public."  Section 904 provided, "The undertaking mentioned in section nine hundred and one is forfeited, by the commission of any acts which constitute the person by whom it was given a disorderly person."

Therefore, I think it must be assumed that if the pro-

visions of the Code of Criminal Procedure in force at the time Lathrop was convicted and the appellant's undertaking executed were in the same form as when the *Goetting* case was decided, appellant's contention for the necessity of proving in an action on his undertaking that the wife and children had become a public charge would be well founded. But they were not in the same form. Commencing almost immediately after the decision of the *Goetting* case amendments were made both to the provisions of the New York charter and to the provisions of the Code of Criminal Procedure which I think we must construe as intended to meet the views expressed by Judge GRAY and eliminate the indemnity character of the undertaking and thus avoid the necessity thenceforth of proving in an action on such an undertaking that the delinquent's family had become a charge on the public treasury.

The *Goetting* case was decided in March, 1908. In May, 1908, an act was passed (Laws of 1908, chapter 357) amending section 687 of the Greater New York charter by providing that in an action or proceeding instituted upon any undertaking of the character which we have been discussing, "it shall not be necessary to prove the actual payment of money by the commissioner of public charities but the neglect to pay the sum ordered to be paid by competent authority for the support of the wife or children shall be a breach of the undertaking and the measure of damages shall be the sum ordered to be paid and which was withheld at the time of the commencement of the action with interest thereon."

In May, 1909, an act was passed (Laws of 1909, chapter 506) amending subdivision 1 of section 901, Code of Criminal Procedure, relating to the execution and form of undertaking by disorderly persons of the class now under consideration so that it read as follows: " If he (the person executing the undertaking) be a person described in the first or second subdivision of section eight hundred

and ninety-nine, that he will pay to the county superintendent of the poor * * * or to a society for the prevention of cruelty to children, weekly for the space of one year thereafter a reasonable sum of money to be specified by the magistrate for the support of his wife or children."

It will be noted that by this amendment there are stricken from this subdivision of section 901 the words found therein at the time of the *Goetting* decision to the effect that the undertaking executed by the delinquent should be conditioned that he would "indemnify the county, city, village, or town, against their becoming, within one year, chargeable upon the public." The words directly expressive of the idea of indemnity which lay at the bottom of Judge GRAY'S opinion are stricken out.

By said amendatory act section 904 was also amended by providing that the undertaking required to be given under section 899 should be forfeited "by the failure to make the weekly payments ordered by the magistrate."

Under the provisions of the Code of Criminal Procedure as they thus were at the time appellant's undertaking was executed, construed in the light of this series of very significant amendments, not only to them but to the related provisions of the charter of the city of New York, eliminating any expression of the idea that the undertaking was one simply of indemnity and providing expressly that the failure to make the weekly payments provided by the undertaking should work a forfeiture thereof, I think it is clear that the appellant's contention that it must be proved that the public treasury has actually suffered through the family of the delinquent becoming a public charge is not sustained, and that respondent was entitled to recover without such evidence.

So far as concerns the other attempted defense, I do not think that the evidence offered by the appellant and which was excluded by the court tended to establish that he was relieved from liability on his undertaking by reason

of the insanity of Lathrop accruing after the undertaking was executed.

The judgment convicting Lathrop of being a disorderly person and the undertaking executed by appellant were founded on the liability of Lathrop to support his wife. The judgment convicting him of being a disorderly person because he did not do this necessarily established that he was liable and able to support her at the time the judgment was rendered, and appellant on well-established principles cannot in this action question the force of this judgment or dispute the recitals in and consideration for the undertaking which he executed. (*Decker* v. *Judson,* 16 N. Y. 439; *Harrison* v. *Wilkin,* 69 N. Y. 412.)

The obligations of this undertaking were not necessarily conditioned on the delinquent's ability to work and personally earn the money which he was required to pay for the support of his wife, and in this respect it differed from the obligations involved in the cases cited by appellant, where default in the performance of some act or duty of a personal nature was excused because of physical inability to perform the same. (*People* v. *Tubbs,* 37 N. Y. 586; *Grove* v. *Johnston,* 24 L. R. [Ireland 1889-90] 352.)

Lathrop's liability for the support of his wife did not cease even if he became insane, and unquestionably the liability to pay a weekly sum for the support of his wife could be enforced against his estate even though he was personally incapacitated. (*In re Shaper* v. *Estate of Wing,* 2 Hun, 671; *Stuckey* v. *Mathes,* 24 Hun, 461.)

I do not deem it necessary to consider the question whether the appellant would have been relieved from liability if it had appeared that Lathrop had become incapacitated to support his wife by reason of insanity accruing after the undertaking was executed, and in addition it had appeared that he was possessed of no property or means from which payment could be made of the sum ordered to be paid, for in my opinion the evidence does not fairly

present that situation.   The testimony does not to my mind indicate that any condition of insanity arose after the undertaking was executed and within the year covered thereby, and I fail to find any evidence whatever that Lathrop possessed no means or property from which could be made the payments which he was ordered to make, and payment of which in effect the appellant guaranteed.

I think the judgment should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., WERNER, CUDDEBACK, MILLER and CARDOZO, JJ., concur; COLLIN, J., concurs in result.

Judgment affirmed.