EDWIN M. POST and GROVE E. WARNER, Respondents, *v.* EDWARD R. THOMAS and CHARLES A. HAMILTON, Appellants, Impleaded with ORLANDO F. THOMAS, Defendant.

First Department, December 14, 1917.

Appeal — action by broker to recover balance of pool accounts — effect of reversal of judgment in favor of one and against another defendant — reference — release — when seal unnecessary — consideration for release — partial failure of consideration — accord and satisfaction — letter and reply thereto fixing liability of parties to pool account.

Where, in an action at law by the members of a firm of stockbrokers to recover a balance alleged to be due upon a so-called speculative pool account, which said firm carried for the defendants, upon the theory that they are jointly liable therefor, there was no claim made by either defendant as against the other in their answers, nor were the answers of either defendant served upon the other, and judgment was rendered dismissing the complaint as to the defendant H. and granting judgment for the full amount against the defendant T., but not determining whether T. had a right of contribution against H., and the plaintiffs did not appeal from the judgment dismissing the complaint as to H., but T. appealed from both parts of the judgment, the reversal of said judgment did not inure to the benefit of the plaintiffs.

A judgment for or against two or more joint parties does not determine their respective rights in a subsequent controversy between themselves, unless they were adverse parties in the original action, subject to the following exceptions: (1) Suits in equity where the court brings in all the parties interested and, (2) where all the questions that could be litigated in the subsequent action must have been established in the prior action.

As the Court of Appeals on the affirmance of the judgment of the Appellate Division on the first trial, in denying a motion by the defendant H. to have the remittitur amended, limiting the reversal of the judgment and the new trial to that portion which directed the judgment against the defendant T., stated that the question of the effect of such reversal

First Department, December, 1917.            [Vol. 180.

is left for future adjudication, the court properly referred the whole matter, as it could be more adequately determined by the referee.

The common-law rule requiring a release to be under seal no longer has any force, except where the liability is evidenced by a specialty. If the intent to be gathered from the language used shows that it was intended as a release, and it is given for a consideration, no seal is necessary.

An expressed consideration in a release of " one dollar and other valuable consideration " is open to investigation.

Where part of the consideration for a release executed by one of the defendants was his promise to furnish evidence of the other defendant's liability, his failure to furnish such proof constituted only a partial failure of the consideration, which might give rise to an action for damages, but would not violate the release.

A demand by plaintiffs' attorneys served on the attorneys for the defendant that he produce certain books and papers relating to the alleged promise made nine years after the commencement of the action, *held*, not to have been made in good faith to secure the evidence, but merely as a foundation of claiming a default in performance.

There being a controversy between the parties as to T.'s liability, the plaintiffs claiming that T. was liable jointly with H. for the balance due, while T. contended that he was severally liable for two-thirds of the original indebtedness which he had already satisfied, there was an accord and satisfaction effected by T. agreeing to pay a certain amount and take up the stock, and the plaintiffs agreeing to accept the same and give a release, and the completion of such transaction.

Where T., after he had taken over the interest of another member of the syndicate, wrote to plaintiffs' firm that his present interest in the pool was a two-thirds interest, and that he was responsible for two-thirds of its losses and entitled to two-thirds of its profits, the other one-third being owned by H., and that the account was in no sense a joint account, and asked for a confirmation of the receipt of the letter, a letter by the firm, stating that they understood that T. was now the sole owner and liable for two-thirds of the syndicate account, the remaining one-third being the property of H., was more than a mere acknowledgment of the receipt of T.'s letter, and was, in effect, an acceptance by the plaintiffs of the notice of the liabilities of the parties to the syndicate account, and an assent thereto. If the plaintiffs had not intended to assent, they should immediately have notified the defendant T. that they would hold him to a joint liability.

APPEAL by the defendants, Edward R. Thomas and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 23d day of June, 1916, upon the report of a referee appointed to hear and determine the issues.

The defendant Thomas further appeals from an order entered

in said clerk's office on the 5th day of June, 1916, denying his motion to strike the referee's report from the files and to declare the reference terminated and for the removal of the referee upon the ground of misconduct and for the appointment of another referee, and also from an order denying his motion for a review of the taxation of costs herein.

The defendant Hamilton appeals not only from the judgment, but also from the order of reference herein entered in said clerk's office on the 18th day of March, 1915.

*Edward L. Blackman* of counsel [*Atwater & Cruikshank,* attorneys], for the appellant Edward R. Thomas.

*Origen S. Seymour* of counsel [*Huntington, Rhinelander & Seymour,* attorneys], for the appellant Charles A. Hamilton.

*William G. Wilson* of counsel [*Wilson & Wallis,* attorneys], for the respondents.

PAGE, J.:

The action was brought by the plaintiffs, a firm of stock-brokers, to recover a balance alleged to be due upon a so-called speculative pool account. This account was carried on the books of the plaintiffs under the heading " K. K. Syndicate." For brevity in this opinion it will be designated as the K. K. account.

This is an appeal from a judgment upon the second trial of this case. Upon the first trial the referee directed a judgment dismissing the complaint as to the defendant Hamilton and granting judgment for the full amount against the defendant Thomas. The plaintiffs did not appeal from the judgment dismissing the complaint as to the defendant Hamilton. The defendant Thomas appealed to this court from both parts of the judgment. Upon the appeal a very full statement of facts is contained in the dissenting opinion of Mr. Justice LAUGHLIN, and, therefore, it will be unnecessary in this opinion to state the facts in detail. The judgment was affirmed in this court (153 App. Div. 865) but was reversed in the Court of Appeals (212 N. Y. 264). The theory upon which the referee granted judgment against the defendant Thomas and dismissed the complaint as to the defendant

First Department, December, 1917.          [Vol. 180.

Hamilton was that, whatever the liabilities of the parties might have been at the inception of the K. K. account with the stockbrokers, by reason of the subsequent transfer of that account by order of the defendant Thomas to the International Silver account which was owned by him solely, the joint adventure of the parties terminated and the account was taken over by Thomas individually, and that although the International Silver account burdened with the debit balance of the K. K. account was subsequently retransferred by order of Thomas to the K. K. account, the original relation of the parties thereto was not restored and that Hamilton consequently was relieved from liability on account thereof. The referee further held that the release that the brokers gave to the defendant Thomas being based upon a part payment of a debt that was concededly due, was of no force and effect. On the appeal to this court the justices disagreed. Mr. Justice SCOTT, writing for the majority of the court, adopted this view, holding that Thomas was the agent for the members of the pool and that the transfer of the K. K. account to the International Silver account, which was in effect his own account, ended the agency so far as Hamilton was concerned, and that there was nothing in the evidence to show that Hamilton ever authorized Thomas to re-embark upon the K. K. account, and, therefore, Thomas being the only party that was responsible, the release to him was without consideration. Mr. Justice LAUGHLIN, in his dissenting opinion, took the ground that the transfer of the K. K. account to the International Silver account and its retransfer to the K. K. account was a transfer in form only, whereby the contribution of the defendant Thomas to the K. K. account was increased by the amount of the balance then standing to the credit of the International Silver account, and that whether the liability of Thomas was that of a partner or an individual two-thirds liability, the release was valid and binding as to him; that if his liability was that of a partner, the appropriation of his individual funds to the payment of the partnership debt in consideration of his being released therefrom, would be a valuable consideration, whereas if he was severally liable for two-thirds of the partnership debt the payment by him was in excess of his debit balance, and the taking

over of the stock by him and thereby relieving the brokers from further loss by reason of the depreciation of the stock, furnished a valuable consideration.

On appeal to the Court of Appeals Judge CHASE stated that there was a difference of opinion among the members of the court as to what was intended by the transfer of the K. K. account to the International Silver account and to the retransfer of the entire International Silver account to the K. K. account, and, therefore, that court does not decide the effect of that transaction; but they held that although this court had found that such a transaction terminated the pool account and that Thomas became individually liable therefor, that the defendant Thomas in good faith claimed the contrary at the time of the settlement and release, and that his good faith is emphasized by the fact that two of the justices of the Appellate Division adopted his view thereof. There was, therefore, a controversy between the parties in good faith, and no matter what the real merits of the transactions were, that the receipt of the $30,000 in exchange for the stock and release became an accord and satisfaction as to Thomas, and that the plaintiffs could not accept the money in settlement of a real controversy and then repudiate the conditions on which it was paid. If the Court of Appeals had the power that this court has, to reverse findings of fact and make new findings, they undoubtedly, holding this opinion, would have dismissed the complaint as was recommended by the dissenting justices in this court. Not having that power they ordered a new trial. Thereupon, the defendant Hamilton moved in the Court of Appeals to have the remittitur amended limiting the reversal of the judgment and the new trial to that portion which directed the judgment against the defendant Thomas. This motion was denied, the court stating: " Motion to amend remittitur denied, without costs. The judgment appealed from was reversed simply on the appeal of defendant Thomas. The question of the effect of such reversal is left for future adjudication." (212 N. Y. 585.) The only questions remaining open for a determination on the new trial were: (1) The effect of the transaction transferring the K. K. account to the International Silver account and back again to the K. K. account. This would not present

much difficulty of solution inasmuch as the court had held that in either of the views suggested of this transaction there was sufficient consideration for the release of defendant Thomas. (2) The accord and satisfaction by the payment of the $30,000 by Thomas and the giving of the release by the plaintiffs. (3) The effect of the reversal of the former judgment on Thomas' appeal. The defendant Hamilton appeared upon the motion for the appointment of a referee and objected to the granting of the motion to retry the issues that had been determined in his favor upon the first trial. The court granted the order of reference, and upon this appeal the defendant Hamilton brings up this order for review.

The defendant Hamilton appeared before the referee, and moved that the action be dismissed as to him upon the former judgment, the case on appeal, the remittitur of the Court of Appeals and the order denying the motion to amend the remittitur. The referee denied the motion upon the ground that the defendant Thomas, having appealed not alone from that portion of the judgment against himself, but also that portion of the judgment that was in favor of the defendant Hamilton against the plaintiffs, and the Court of Appeals having reversed the judgment on such appeal, and having refused on Hamilton's application to limit the reversal, the judgment as appealed from was reversed and that Hamilton was and must remain a party to the litigation.

The result of the trial before this referee is that he has disregarded all of the theories which had theretofore been expressed by the courts and has granted judgment against both defendants for $48,325.06, with interest from July 1, 1904, amounting to $34,712.50, and the plaintiffs' costs as taxed, $12,130.43, amounting altogether to $95,167.99. The bill of costs included a referee's fee of $6,210. In view of the decision of the Court of Appeals and its refusal to pass upon the effect of the reversal of the judgment upon the defendant Hamilton's rights and a reservation of that question for further determination, it becomes necessary, first, to consider the effect of the reversal of a judgment dismissing the complaint as to one of the defendants where the plaintiffs do not appeal from the judgment, but a codefendant does appeal.

It must be borne in mind that the action is at law, and

not in equity. There was no claim made by either defendant as against the other in their answers, nor were the answers of either defendant served upon the other.

" As a general rule, parties to a judgment are not bound by it in a subsequent controversy between themselves, unless they were adversary parties in the original action. That is to say, a judgment for or against two or more joint parties ordinarily determines nothing as to their respective rights and liabilities, as against each other, in their own subsequent controversy." (Black Judg. [2d ed.] § 599.) The exceptions to this rule are: (1) Actions in equity where the court brings in all the parties interested in the controversy that their rights may be determined and relief awarded that adequately adjusts those rights and finally determines all the controversies between all the parties in reference to the subject-matter of the action; (2) where all the questions that could be litigated in the subsequent action must have been established in the prior action, *e. g.*, an action by the holder of a note against all the indorsers is conclusive in a subsequent action by an indorser, who has paid the note, against a prior indorser.

The former judgment in this action held that the defendant Thomas was solely liable to the plaintiffs, but did not determine that if Thomas paid the judgment recovered by plaintiffs either then or upon a new trial, he had no right of action against the defendant Hamilton for contribution, which is the reason suggested in the dissenting opinion as the possible reason for the appeal of the defendant Thomas from that portion of the judgment and was in effect the ground taken by Thomas in his brief submitted to the court.

The sole party aggrieved by that determination was the plaintiffs and they did not appeal. but acquiesced in the judgment. The defendant Thomas was not aggrieved, and, therefore, had no right to appeal and his appeal could well have been dismissed. The only parties, therefore, to be benefited by the reversal of the judgment against Hamilton were the plaintiffs who had not appealed, but on the contrary had acquiesced in the judgment. While cases may be found where one or more coparties have appealed, a reversal may inure to the benefit of all the coparties. I do not believe any case can be found where, in an action at law, and the

plaintiff has not appealed, it has been held that a several judgment in plaintiff's favor as to one of the parties defendant and against him as to another defendant, that the result of the appeal of the unsuccessful defendant inures to his benefit. The judgment appealed from was not a joint judgment, but was several to the effect that as against the defendant Thomas the plaintiffs were entitled to recover, while as to the defendant Hamilton their complaint was dismissed. The learned justice seemed to be of the opinion that the issues as to the defendant Hamilton should not be referred but felt himself concluded by the order of the Court of Appeals refusing to amend the remittitur. In this, I think, he was correct. The determination of that question having been reserved, the matter could have been more adequately determined by the referee. The referee's determination thereof, however, was erroneous. I am of opinion that for the reasons above assigned the order and judgment as to Hamilton should be reversed, with costs.

The defendant Thomas has been held liable jointly with the defendant Hamilton. The question as to whether the transferring of the K. K. account to the International Silver account and the retransfer of the balance created by the merger of these two accounts to the K. K. account terminated Thomas' agency, and made him sole owner thereof, or whether this transaction was merely a matter of bookkeeping, the effect of which was merely a payment by Thomas individually on account, leaving the rights and liabilities of the parties as they were, upon which the justices of this court and the judges of the Court of Appeals were divided, has, on this trial, been resolved in favor of the latter construction. This finding is based on further evidence, and is accepted by the counsel for the defendant Thomas as correct. That question is, therefore, removed from the case. Although the referee found the fact to be as stated by Mr. Justice LAUGHLIN, he has refused to follow his application of the law to these facts. His contention being that a release must be under seal; that the plaintiffs intentionally and wisely omitted the seal, and hence although the instrument itself purported to have been given for a consideration and contained the words, " I hereby release and absolve you from any liability on account of what was carried on the books of Post & Company and

known as the ' K. K. Syndicate account,' and will execute any further paper which you may require to carry this out," nevertheless, because there was no seal affixed, the instrument did not operate as a release.

The common-law rule, requiring a release to be under seal, no longer has any force except in the case where the liability is evidenced by a specialty. If the intent, to be gathered from the language used, shows that it was intended as a release, and it is given for a consideration, no seal is necessary. This modern rule is so. well established as not to require citation of authority. The consideration expressed is " one dollar and other valuable consideration," and of course is open to investigation. Upon the facts the case is now, in this regard, practically the same as when it was before us on the former appeal, the only difference being that the plaintiff has changed his testimony in an effort to obviate the effect given to it on the former appeal. Although the referee erroneously excluded evidence that would have demonstrated, had it been admitted, the falsity of his present testimony, there are sufficient facts proved to sustain the conclusion that at most the promise of the defendant Thomas to furnish evidence of Hamilton's liability was only a part of the consideration, and a very minor part, for the plaintiff himself states that he placed no reliance upon it and did not believe it. As was pointed out by the Court of Appeals, even if Thomas had been put in default by failure after demand to furnish this proof, it would have constituted at most a partial failure of consideration which might give rise to an action for damages, but would not violate the release. (212 N. Y. 274.) The court further says that " it does not appear that there has been any failure on the part of Edward R. Thomas to show the transactions of the members of the pool under such alleged promise." (Id.) In an attempt to meet this criticism, the day before the commencement of the second trial the plainti ffs' attorneys served on the attorneys for the defendant Thomas a demand that he produce, on the next day and all subsequent days, all books and writings containing or relating to the accounts of the firms of Thomas & Post and Thomas & Thomas with the pool syndicate or partnerships, known or designated as the K. K. Syndicate.

First Department, December, 1917. [Vol. 180.

The firms of Thomas & Post and Thomas & Thomas had been dissolved many years prior to this time, and Edward R. Thomas was at the time the notice was given absent from the country, to the plaintiffs' knowledge. The demand evidently was not made in good faith to secure the evidence, but merely as a foundation of claiming a default in performance. Such demand was futile. The default must have existed at the commencement of the action, and a demand made nine years after that date could not establish evidence of a default prior thereto. Again, Thomas was to be released and the promise, therefore, must have referred to furnishing the proof in an action to establish the several liability of Hamilton for the one-third which Thomas contended was not his liability. Thomas' counsel, however, before the plaintiffs closed their case, and within a month after the service of the demand, stated that he had located the books in a storage warehouse and offered to produce them or any part thereof that counsel desired. Plaintiffs' attorney did not avail himself of this offer and objected to the reception of the said accounts in evidence when offered by the defendant Thomas and now justifies his objection on the ground that evidence of the dealings as between the partners was not material to this trial, as the rights of the defendants *inter sese* could not be determined therein, thus giving force to the suggestion that the demand was made merely for the purpose of creating a condition on which to predicate a formal default. There can be no doubt that the prime consideration for the release was the payment of the $30,000 and the taking up of the stock, nor can there be any question that it was the intention to release Edward R. Thomas from further liability on account of the K. K. account. As was pointed out by the Court of Appeals, there was a controversy between the parties as to Thomas' liability, the plaintiffs claiming that Thomas was liable jointly with Hamilton for the balance due, while Thomas contended that he was severally liable for two-thirds of the original indebtedness, which he had already satisfied. Whichever view was correct is immaterial. The claim was made by Thomas in good faith. When he took over the interest of O. F. Thomas he wrote to the plaintiffs' firm, informing them of the fact, and stated: " I wish it clearly

understood that my present interest in this pool is a two-third interest, and that I am responsible for two-thirds of its losses and am entitled to two-thirds of its profits after I am credited with the $50,000 margin which I now have on my two-thirds share in excess of Mr. Hamilton's proportionate margin; the other one-third being owned by Mr. C. A. Hamilton; that this account is in no sense a joint account. In other words, myself and Mr. Hamilton are each liable for one share and not for the share of the other," and asked for a confirmation of the receipt of the latter. To this Post & Company replied: "Concerning the Keokuk & Des Moines Syndicate [the K. K. account] we now understand that you are sole owner and liable for 2/3 of the same and that Mr. O. F. Thomas has no further interest in said Syndicate; the remaining 1/3 being the property of C. A. Hamilton." The learned referee has held that this latter was a mere acknowledgment of the receipt of the letter, but it was more than this. It was an acceptance by the plaintiffs of the notice of the liabilities of the parties to that account and an assent thereto. If they did not intend to assent they should immediately have notified the defendant that they would hold him to a joint liability. This they did not do. That there was an actual controversy is further shown by Post's letter to Hamilton, dated the day before the matter was finally consummated but after the agreement had been reached, in which he stated that there was a debit balance of $74,916.38 and interest, and states: "I have consulted with Mr. E. R. Thomas, and he states that this represents your one-third interest in the Syndicate, he having taken up his proportion. Of course I cannot be responsible for any settlement between you and Mr. Thomas and, therefore, I hold you and him jointly," thus showing an assertion on plaintiffs' part of a joint liability and on defendant's Thomas' part of a several liability, which on his part had been satisfied. The parties reached an accord of the controversy by Thomas agreeing to pay $30,000 and take up the stock, and the plaintiffs agreeing to accept the same and give a release, and when the transaction was complete there was an accord and satisfaction. Plaintiffs thereafter had no claim upon Thomas on account of the K. K. account.

The judgment should be reversed, with costs to both defendants, and judgment directed dismissing the complaint as to Hamilton, with costs, and for defendant Edward R. Thomas upon the merits, with costs.

As to the appeals from the orders, we have already indicated that the order appointing the referee and sending the issues as to the defendant Hamilton was not erroneous, but we further say that an appeal from the order appointing a referee should be appealed from directly and should not be brought up on the appeal from the judgment. Having determined to reverse the judgment, we do not consider it necessary to pass upon the other orders brought up by the notice of appeal.

Findings inconsistent with this opinion are reversed. Submit on notice findings in place thereof.

CLARKE, P. J., LAUGHLIN, DOWLING and SHEARN, JJ., concurred.

Judgment reversed, with costs to both appellants, and judgment directed dismissing complaint as to Hamilton, with costs, and for defendant Thomas upon the merits, with costs. Order to be settled on notice.