Edwin M. Post et al., Respondents, *v.* Edward R. Thomas, Appellant, and Charles A. Hamilton, Respondent, Impleaded with Another.

Accord and satisfaction — settlement of real contest between parties will be upheld — stockbrokers — when payment by customer in settlement of disputed account cannot be repudiated — partial failure of consideration.

1. If a debt or claim be disputed or contingent at the time of payment the payment when accepted of a part of the whole debt is a good satisfaction, and it matters not that there was no solid foundation for the dispute. The test in such cases is, was the dispute honest or fraudulent? If honest it affords the basis for an accord between the parties, which the law favors, the execution of which is the satisfaction.

2. In an action by a firm of stockbrokers to recover a balance alleged to be due from defendants, as partners in a joint venture in buying and selling and dealing in a certain stock, there was some evidence to sustain a finding or conclusion to the effect that the appellant assumed the account and thereby became personally liable for the whole thereof. There was a further finding, however, that the appellant claimed the contrary and in good faith denying liability in a greater amount than a sum named offered to take up the stock and pay to the plaintiffs a somewhat larger sum conditioned upon their releasing him from liability, and that the plaintiffs thereafter executed and delivered to him an instrument in writing, not under seal, releasing and absolving the appellant from any liability on the account. *Held*, that a finding that the release was given without any consideration has no evidence to support it; that the question as to whether there was any consideration does not depend upon whether the appellant became personally liable for the whole amount due, but whether at the time of the settlement there was a legitimate controversy which resulted in the payment of the amount conditioned upon the plaintiffs giving the receipt which they did give to said appellant; that plaintiffs obtained the amount paid in exchange for the stock and the release, and could not accept the money in settlement of a real controversy and then repudiate the conditions on which it was paid.

3. A partial failure of the consideration of the release, that appellant would show the transactions of the members of the pool when-

ever necessary, would not defeat the release generally. The remedy for such a breach of the contract would be in damages for its non-performance.

*Post* v. *Thomas*, 153 App. Div. 865, reversed.

(Argued May 14, 1914; decided July 14, 1914.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 26, 1912, affirming a judgment in favor of plaintiffs and against the defendant, appellant, entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edward L. Blackman* for appellant. The defendant Thomas pleaded and proved a valid release. (*Simons* v. *American Legion of Honor*, 178 N. Y. 263.) The claim against Thomas was not liquidated. The release was given for a good consideration. (*Simons* v. *American Legion of Honor*, 178 N. Y. 263; *Sears* v. *Grand Lodge, etc.*, 163 N. Y. 374; *Nassoiy* v. *Tomlinson*, 148 N. Y. 326; *Wehrum* v. *Kuhn*, 61 N. Y. 623; *Crans* v. *Hunter*, 28 N. Y. 389; *Minehan* v. *Hill*, 144 App. Div. 854; *Jackson* v. *Volkening*, 81 App. Div. 36; 178 N. Y. 562.) Assuming but not conceding that the liability of the defendants prior to April 14, 1903, was joint, the letters of April thirteenth and fourteenth established a new contract for separate liability only. Thomas not only paid in full but overpaid his separate and individual liability. (*Seligman* v. *Friedlander*, 199 N. Y. 373; *Allison* v. *Abendroth,* 108 N. Y. 470; *Luddington* v. *Bell*, 77 N. Y. 138.)

*William G. Wilson* for plaintiffs, respondents. The three defendants were partners in the joint venture known as the K. K. pool. (1 Lindley on Part. 175; *Hubbell* v. *Buhler*, 43 Hun, 82; *Spier* v. *Hyde*, 92 App. Div. 467; *Hackett* v. *Stanley*, 115 N. Y. 629; *Orvis* v. *Curtiss*, 157

N. Y. 657; *Franklin* v. *Hoadley*, 115 App. Div. 538; *Quincey* v. *Young*, 5 Daly, 327.) The effect of the sale and transfer of the interest of O. F. Thomas to E. R. Thomas in April, 1902, was not to relieve any of the defendants of their existing liabilities. (*Quincey* v. *Young*, 5 Daly, 327.) The so-called release to E. R. Thomas is inoperative to discharge him from liability. (*Ryan* v. *Ward*, 48 N. Y. 204; *Bunge* v. *Koop*, 48 N. Y. 225; *Mance* v. *Hossington*, 205 N. Y. 33; *De Zeng* v. *Bailey*, 9 Wend. 336; *Irvine* v. *Millbank*, 56 N. Y. 635; *Morgan* v. *Smith*, 70 N. Y. 537; *Line* v. *Nelson*, 38 N. J. L. 358.)

*Origen S. Seymour* and *Leverett J. Luce* for defendant, respondent.

Chase, J. In September, 1901, the three defendants and one other person entered into a pool to buy, sell and deal in the stock of the Keokuk and Des Moines Railroad Company for the purpose of acquiring all or a large portion of the eleven thousand shares outstanding of the stock of said company other than that owned by the Rock Island Railroad Company in the expectation that thereby the market price of said stock would be greatly advanced or that the Rock Island Railroad Company, which held fourteen thousand shares of the stock of the said Keokuk and Des Moines Railroad Company, would sell a sufficient part of its said shares to give the pool control of a majority of the stock of said company. Each of the four men contributed $5,000 to the pool. Within a few days thereafter the fourth man, with the consent of the others, withdrew from the pool, and he was repaid the $5,000 that he had contributed. Subsequently an additional payment of $5,000 was put into the pool by each of the three defendants. It was mutually agreed that the defendant Edward R. Thomas and the defendant Orlando F. Thomas or one of them would manage the pool. By mutual agreement the money of

the pool was first deposited with the firm of Thomas & Post, stockbrokers, in the name of the "K. & K. Syndicate." The stock of the company was purchased and sold through said stockbrokers and they carried the stock purchased for the pool in the "K. & K. Syndicate" account.

The account was subsequently transferred to Thomas & Thomas, stockbrokers, and thereafter and about April 1st, 1903, to the plaintiffs, stockbrokers. When the account was transferred to the plaintiffs it was indebted, and the plaintiffs paid to Thomas & Thomas in taking over the account $169,994.16 and received as collateral to such balance 5,450 shares of the stock of the Keokuk and Des Moines Railroad Company which belonged to the pool. A detailed statement of the account was made and delivered each month prior to April 1st, 1903, to the defendants and each of them showing the condition of said account. On the 3d day of April, 1903, plaintiffs made a demand for the payment of $25,000 on account upon each of the members of the pool. Soon thereafter $50,000 was paid to the plaintiffs on account of Edward R. Thomas and Orlando F. Thomas to be applied to the pool account. Hamilton never replied to the demand upon him for the payment of $25,000 to the credit of such account.

On the 13th day of April, 1903, Orlando F. Thomas sold and transferred his interest in the pool to Edward R. Thomas. On that day Edward R. Thomas wrote to the plaintiff a letter in which among other things he said: "I also wish to inform you that I have purchased from Mr. O. F. Thomas his one-third interest in the account on your books known as the 'Keokuk and Des Moines pool,' and that I hereby assume all his liability and credit in the same. I wish it clearly understood that my present interest in this pool is a two thirds interest and that I am responsible for two thirds of its losses and am entitled to two thirds of its profits after I am credited with the

$50,000 margin which I now have on my two thirds share in excess of Mr. Hamilton's proportionate margin; the other one third being owned by Mr. C. A. Hamilton and that this account is in no sense a joint account. In other words myself and Mr. Hamilton are each liable for our share and not for the share of the other."

At that time it seems to be conceded that the stock held as collateral to the account was worth more than the indebtedness of the pool to the plaintiffs. On April 14, the day following the letter from which we have quoted, plaintiffs wrote Edward R. Thomas and said: "We beg to acknowledge the receipt of your esteemed favor of the 13th inst. and have noted the sales charges and credits as noted therein * * * Concerning the Keokuk & Des Moines syndicate we now understand that you are sole owner and liable for two thirds of the same and that Mr. O. F. Thomas has no further interest in said syndicate, the remaining one third being the property of C. A. Hamilton."

Orlando F. Thomas on April 13 wrote the plaintiffs saying: "I have sold to Mr. E. R. Thomas my one third interest in the Keokuk & Des Moines syndicate including whatever margin I may have against it and no further liability attaches to me."

The collateral being then sufficient to pay the pool indebtedness there is some basis for the claim, at least as between the plaintiffs and the defendant Edward R. Thomas, that the plaintiffs assented to carrying the "K. & K. Syndicate" account with the personal liability of Edward R. Thomas therefor, limited to two-thirds of the amount thereof subject to a division as between him and Hamilton, taking into account the payments that had theretofore been made by each on account of the pool. The account was continued, and the plaintiffs in June thereafter told Mr. Edward R. Thomas that it was impossible for them to use the Keokuk and Des Moines stock in their loans, and for that reason it was impossible

for them to carry the account. One of the plaintiffs testified that on the 15th day of June he made such representations to Mr. Edward R. Thomas as caused him to take over the account in its entirety, which he did by having the debit balance in the account and the stock transferred to an account which he, Thomas, owned on the books of the plaintiffs entitled the "International Silver Syndicate Account." This statement to Edward R. Thomas was apparently made by telephone, and on the same day, June 15, the plaintiffs wrote Edward R. Thomas a letter in which they say: "In accordance with your telephone conversation * * * we have charged the International Silver Syndicate account with the entire K. K. Syndicate account as per statement herewith."

Some days after the transfer of this account Edward R. Thomas asked to have it transferred to its own name. Plaintiffs wrote him a letter in which they say: "In regard to transferring the K. K. Syndicate account from the International Silver account back to its own name we find that while it is true the K. K. Syndicate has been benefited by the transfer to the International Silver Syndicate at the same time at the present moment while it stands in the latter account it is receiving the benefit of the value of approximately $12,000 worth of silver certificates which are in the Silver Syndicate account. The entire debit balance of the International Silver account is approximately $102,000 and if the K. K. Syndicate stock is removed from that account with the debit balance it will suffer somewhat by the removal. It would place it in a stronger position if you would strengthen the K. K. account to about the extent mentioned above which is now represented by silver securities."

It will be seen by this letter that the plaintiffs were reluctant about retransferring the K. K. account for the reason stated that they wanted the benefit of about $12,000 worth of silver securities which seemed to have

been held to the credit of the account. It does not appear just what was done in settling this controversy, but the balance of the K. K. account after deducting therefrom the amount that was to the credit of the International Silver Syndicate account, being $36,123.30, was transferred to its own name.

No claim seems then to have been made by the plaintiffs that the "K. K. Syndicate" account and liability had become the personal account and liability of Edward R. Thomas.

In June, 1904, there was due the plaintiffs on said account $78,045.92, and the plaintiffs held as collateral to said account 2,450 shares of the stock of the Keokuk and Des Moines Railroad Company, which stock was of uncertain value. The market value of the stock at that time does not appear. At that time according to the claim and computation of Edward R. Thomas if the payments made by him and Hamilton were taken into consideration without considering the interest included in such balance, he was liable for and should pay $23,323.85 thereof and Hamilton should pay $54,723.37 thereof.

It was also claimed by Thomas that if the interest included therein was adjusted as between Hamilton and himself the amount of said account that should be paid by him was about $17,323.85 and the amount that should be paid by Hamilton was about $60,723.07, in case of which payments the 2,450 shares of stock would be owned by Thomas and Hamilton in the proportion of two-thirds to Thomas and one-third to Hamilton. The court found "that on or about the 23d day of June, 1904, the plaintiffs requested the defendant Edward R. Thomas that the 'K. & K. Syndicate' account be taken up, whereupon the said defendants stated to the plaintiffs that the then balance of said account was properly chargeable to the defendant Charles A. Hamilton as the transactions of the members of the pool showed, which proof he would furnish the plaintiffs whenever necessary; that he the

defendant Edward R. Thomas was willing to take up the
2450 shares of the stock of said Railroad Company then
held by the plaintiffs to the credit of said account and
pay to the plaintiffs the sum of $30,000, if the plaintiffs
would execute and deliver to him a release of his obliga-
tion to them on said account.    That the plaintiffs there-
after executed and delivered to him an instrument in
writing not under seal and without any consideration in
form as follows:          "NEW YORK, *June 23rd*, 1904.
"E. R. THOMAS, Esq.,
          "71 Broadway New York City:
    "'DEAR SIR.— For one dollar, and other valuable con-
siderations, and by virtue of the powers vested in me as
sole liquidator for the firm of Post & Company, and as
their attorney in fact, I hereby release and absolve you
from any liability on account of what was carried on the
books of Post & Company, and known as the 'K. K.
Syndicate Account' and will execute any further paper
which you may require to carry this out.
          "Yours truly,
                    "EDWIN M. POST,
    "*Liquidator and attorney in fact for Post & Co.*
"Witness M. L. BOWDEN.'"

The court also found at the request of the defendant
Thomas as follows: "The defendant E. R. Thomas at
the time of the execution and delivery of Hamilton's
Ex. 4 (the above release) was not admitting liability on
his part to the plaintiffs on the K. K. Syndicate account
in excess of $20,000 but was in good faith denying any
liability for any part of that account other than for two
thirds of the proper amount of the account after credit-
ing the payments of $86,123.30 made by himself and
O. F. Thomas and through the International Silver·
Syndicate to that two thirds and the plaintiffs then
knew and had notice of his such denial of any greater
liability."

We think that the finding of the court that the release was given without any consideration has no evidence to support it. If it be conceded that there is some evidence in the record to sustain the finding or conclusion to the effect that the defendant Edward R. Thomas assumed the "K. & K. Syndicate" account by its being transferred on the books of the plaintiffs to the "International Silver Syndicate" account owned by him and thereby became personally liable for the whole thereof, such finding must be read with the further finding of the court that the defendant Edward R. Thomas in good faith claimed the contrary at the time of the settlement and release. His good faith in claiming the contrary is emphasized by the fact that two of the justices of the Appellate Division in considering this case were of the opinion that it is quite clear "That at least as between the plaintiffs' firm and the appellant the transfer of the pool account to the Silver Syndicate Account did not increase the appellant's liability." They further say: "That was a transfer in form only and the fact that the plaintiffs' firm interposed no objection to transferring the account back to the pool account is cogent evidence that they did not understand that the appellant had become liable to them for the entire pool account."

There is a difference of opinion among the members of this court as to what was intended by the parties to that transaction. It does not appear that the plaintiffs prior to the trial of this action claimed that Edward R. Thomas had become personally liable for the "K. & K. Syndicate" account by reason of its transfer by them to the "International Silver Syndicate" account and no such claim is made by the plaintiffs in the complaint in this action. The question as to whether there was any consideration for the release does not depend upon the question whether Edward R. Thomas became by the transfer of the "K. & K. Syndicate" account personally liable to the plaintiffs for the whole amount thereof, but whether

at the time of the settlement there was a legitimate controversy which resulted in the payment of the $30,000 conditioned upon the plaintiffs' giving the receipt which they did give to said Thomas. The contest was a real and genuine contest and it was the claim then made in good faith by Edward R. Thomas and it is his claim now that the $30,000 paid by him included an amount in excess of the amount that the plaintiffs could have recovered against him together with the market value of the 2,450 shares of stock transferred in connection with such settlement and that such excess was paid for the express purpose of obtaining the release which was then given and which we have quoted.

The amount owing to the plaintiffs from the pool account was easily determined by simple computation, but the amount for which the defendant Edward R. Thomas was legally liable was subject to serious controversy and dispute. Plaintiffs obtained the $30,000 in exchange for the stock and the release. It may be assumed that they could not have obtained the $30,000 without giving both the stock and the release. They could not accept the money in settlement of a real controversy and then repudiate the conditions on which it was paid. (*Nassoiy* v. *Tomlinson,* 148 N. Y. 326; *Auerbach* v. *Curie,* 126 App. Div. 836; *Jaffray* v. *Davis,* 124 N. Y. 164.)

It is the settled law of this state that if a debt or claim be disputed or contingent at the time of payment the payment when accepted of a part of the whole debt is a good satisfaction, and it matters not that there was no solid foundation for the dispute. The test in such cases is, was the dispute honest or fraudulent? If honest it affords the basis for an accord between the parties, which the law favors, the execution of which is the satisfaction. (*Simons* v. *American Legion of Honor,* 178 N. Y. 263.)

The law wisely favors settlements, and where there is a real and genuine contest between the parties and a set-

tlement is had without fraud or misrepresentation for an amount determined upon as a compromise between the conflicting claims such settlement should be upheld, although such amount is materially less than the amount claimed by the person to whom it is paid.

It is said by respondents that the consideration for the release included the promise by Edward R. Thomas to show the transactions of the members of the pool whenever necessary. It does not appear that there has been any failure on the part of Edward R. Thomas to show the transactions of the members of the pool under such alleged promise, but a partial failure of the consideration of the release of the kind and character claimed would not defeat the release generally, but the remedy for such a breach of the contract would be in damages for its non-performance. (*De Kay* v. *Bliss*, 120 N. Y. 91.)

The judgment should be reversed and a new trial granted, costs to abide the event.

WILLARD BARTLETT, Ch. J., COLLIN, CUDDEBACK, HOGAN and CARDOZO, JJ., concur; MILLER, J., not sitting.

Judgment reversed, etc.