**Lee J. CALLOWAY et al., Appellants,**

v.

**CENTRAL CHARGE SERVICE et al.**

**No. 23622.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 26, 1971.

Decided Feb. 24, 1971.

Mr. King David, Washington, D. C., for appellants.

Mr. John F. Mahoney, Jr., Washington, D. C., with whom Messrs. Charles E. Pledger, Jr., and Robert M. Price, Washington, D. C., were on the brief, for appellees.

Before McGOWAN and LEVENTHAL, Circuit Judges, and VAN PELT,* Senior United States District Judge for the District of Nebraska.

PER CURIAM:

Appellants brought an action for damages resulting from a defamatory statement. Appellees denied liability, and filed a counterclaim in the amount of $1,387.75 for breach of contract. At the conclusion of appellants' case on the issue of slander, the trial court directed a verdict for appellees. Appellees' counterclaim was, however, submitted to the jury, which awarded appellees the sum of $1,387.75.

Appellants had an account with appellee Central Charge, and possessed a charge plate bearing the account number, 20–2453–536. On September 25, 1965, appellants requested a second charge plate with this number, but on October 27, 1965, Central Charge mistakenly sent a plate bearing the number 20–2453–036. Invoices for merchandise purchased under both account numbers were subsequently sent to appellants. Several months later, Central Charge notified appellants of the mistake, requesting that plates not bearing their original number be destroyed. Appellants acknowledged the fact that they received such a notice, but denied ever receiving any invoices based on the "036" plate or

ever purchasing any merchandise with that plate.

In July, 1966, a service manager for Central Charge called appellants to discuss an outstanding balance of $1,200. About one week after the call, Mrs. Calloway, one of the appellants, went to a Central Charge office and was informed by the service and credit managers that the outstanding balance had exceeded $1,900 by this time. She was confronted with receipts evidencing purchases made under both the original and mistaken account numbers, and bearing signatures of her name. Mrs. Calloway denied ever having signed any invoice with the "036" number, and claimed that this group of receipts was forged. A heated discussion ensued, during which the service manager called Mrs. Calloway a "damned liar."

Once calm was restored, the two men suggested that Mrs. Calloway report the alleged fraud to the police. Mrs. Calloway agreed and met the service manager two days later at the police station, where she lodged her complaint. In the course of normal police procedures in matters such as this, a sample of Mrs. Calloway's handwriting was taken. Eventually, it was determined by a handwriting expert that Mrs. Calloway had, in fact, signed the receipts in question.[1] Appellants and Central Charge were informed by the police of this finding, and Central Charge continued to mail regular statements to appellants. Appellants made further payments on the balance of the "536" account, and on November 1, 1966, they sent a check to Central Charge for $490.25—the exact amount due on the "536" account. In addition, appellants wrote the original account number, 20–2453–536, on the face of the check, as well as noting that this was to be the "final payment in full."

---

* Sitting by designation pursuant to Title 28, U.S.Code Section 294(d).

1. At trial, appellees introduced evidence demonstrating that several of the disputed receipts bore the number of Mrs. Calloway's driver's license which was used for the purpose of identification. In addition, it was demonstrated that three of the receipts were for medical prescriptions filled out by Mrs. Calloway's doctor.

 Appellants raise three arguments on appeal. First, they claim that all evidence concerning Mrs. Calloway's handwriting sample should have been excluded by the trial court since it was tantamount to a "coerced confession" taken without counsel and therefore in contravention of the Fifth and Sixth Amendments. If Mrs. Calloway's rights had been violated, such evidence resulting therefrom certainly could be excluded in a civil as well as in a criminal proceeding. *See, e. g.,* Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L. Ed.2d 1082 (1968); McCarthy v. Arndstein, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158 (1923). However, Mrs. Calloway's constitutional rights were in no way infringed upon. She voluntarily came to the police station in order to complain about criminal wrongdoing, and willingly gave a sample of her handwriting, as is ordinarily required by the police in claims of forgery. Moreover, assuming *arguendo* that the police had, in fact, coerced her into giving the sample, such evidence has been held to be real, rather than communicative, and therefore not protected by the Fifth Amendment. *See* Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Lewis v. United States, 127 U.S.App.D. C. 269, 382 F.2d 817, cert. denied, 389 U.S. 962, 88 S.Ct. 350, 19 L.Ed.2d 377 (1967). Furthermore, as long as the exemplar is not taken at a critical stage of a criminal proceeding, the accused is not entitled to the assistance of counsel. *See* Gilbert v. California, *supra*; Lewis v. United States, *supra*. Since Mrs. Calloway was, in effect, a complainant at the time the exemplar was taken, it can hardly be said that this was a critical stage.

 Appellants' second contention is that the trial court erred in granting appellees' motion for a directed verdict on the issue of slander. Such a motion can only be granted if a reasonable man, viewing the matter in the light most favorable to the adverse party, would be unable to reach a verdict for that party; conversely, if a reasonable man could have reached different conclusions on the basis of the evidence presented, the motion must be denied. *See* McCoy v. Moore, 78 U.S.App.D.C. 346, 140 F.2d 699 (1944).[2] Our examination of the record reveals that appellants failed to prove an element of their claim. A common insult, such as referring to someone as a "damned liar," is not actionable unless special damages are proved, which normally entails a showing that actual pecuniary or material loss resulted from the conduct of the defamer. *See* Restatement of Torts § 575, Comment c; 1 Harper and James, The Law of Torts § 5.14. In the present matter, appellants have made no such showing. Hence, as a matter of law a verdict could not have been reached for them, and therefore the trial court was correct in granting appellees' motion.

Finally, appellants claim that the trial court erred in denying their motions for a directed verdict and judgment notwithstanding the verdict with regard to the counterclaim. They contend, in effect, that the evidence which they introduced concerning the payment of the $490.25 to Central Charge demonstrated an accord and satisfaction, *i. e.,* the sum tendered to Central Charge was less than the claim in dispute; appellants' notation that the check was to be the "final and full payment" was a clear expression of their intention to have the payment operate as a satisfaction of the entire amount in dispute; and Central Charge accepted the payment as evidenced by its cashing the check. *See* Fire Insurance Ass'n v. Wickham, 141 U.S. 564, 12 S.Ct. 84, 35 L.Ed. 860

---

2. The propriety of granting or denying a motion for a directed verdict is tested both in the trial court and on appeal by the same rule. *See* Seganish v. District of Columbia Safeway Stores, 132 U.S. App.D.C. 117, 406 F.2d 653 (1968). Moreover, this rule is also utilized to ascertain the propriety of a motion for a judgment notwithstanding the verdict. *See, e. g.,* MacKay v. Costigan, 179 F.2d 125 (7th Cir. 1950).

(1891). Once this evidence was introduced, appellants point out that it was incumbent upon appellees to demonstrate that there had not, in fact, been an accord and satisfaction. Appellants argue that appellees failed to do as much and therefore the question should not have been submitted to the jury.

However, our examination of the record shows that there was evidence from which a reasonable man could have found that there was no accord and satisfaction. Since appellants wrote their original account number, 20–2453–536, on the face of the check, and since the payment was the exact amount due under this account, it would not have been a faulty exercise of logic to conclude that Central Charge believed that the check was only a "final and full payment" of the "536" account. Therefore, it was within the province of the jury to decide whether Central Charge was fully aware that the check was to serve as a satisfaction of the disputed amount, and there is substantial evidence to support their conclusion that Central Charge was not so informed.

Affirmed.