**TELEDYNE MID-AMERICA CORPORATION, a Delaware corporation, Plaintiff-Appellant,**

v.

**HOH CORPORATION, a Hawaii corporation, et al., Defendants-Appellees.**

**Nö. 72-2609.**

United States Court of Appeals, Ninth Circuit.

Oct. 31, 1973.

988

L. Richard Fried, Jr. (argued), John P. Gillmor, of Bortz, Case, Stack, Kay, Cronin & Clause, Honolulu, Hawaii, for plaintiff-appellant.

William M. Swope (argued), of Cades Schutte Fleming & Wright, Albert I. Moon, Jr., of Ashford & Wriston, Honolulu, Hawaii, for defendants-appellees.

Before KOELSCH, WRIGHT and TRASK, Circuit Judges.

TRASK, Circuit Judge:

This is an appeal from a judgment of the District Court of Hawaii granting the motion of appellees C. W. Shafer and Jane Shafer to dismiss the plaintiff's complaint under Rule 12(b) of the Federal Rules of Civil Procedure, and granting the motion of appellee HOH Corporation for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The district court had jurisdiction under 28 U.S.C. § 1332, diversity of citizenship, and this court has jurisdiction under 28 U.S.C. § 1291.

Both motions were made in response to a suit brought by the appellant for the collection of trade payables totaling $39,499.65. The complaint charged the Shafers and HOH Corporation with joint and several liability as guarantors of the above-stated debt.

## I. *Teledyne's claim against the Shafers*

On April 12, 1965, C. W. Shafer doing business as Shafer Distributing Company, a sole proprietorship, entered into a franchise agreement with Packard-Bell Sales Corporation giving Shafer the right to distribute Packard-Bell electronic products in Hawaii. Packard-Bell was the predecessor in interest of plaintiff-appellant Teledyne Mid-America Corporation (Teledyne). In connection with the franchise arrangements, C. W. Shafer and Jane Shafer executed a "Continuing Guaranty" dated April 12, 1965, whereby they jointly and severally guaranteed to pay the franchisor, ". . . any and all indebtedness of C. W. Shafer dba Shafer Distributing Co. . . ." Since C. W. Shafer was in effect guaranteeing his own obligation, the principal economic significance of the instrument was to add Jane Shafer as an obligor.[1] The instrument did not purport to bind the successors or assigns of the Shafers. The guaranty did purport to waive certain defenses such as the statute of limitations, need for presentment or protest, etc., and gave the creditor rights of enforcement against any security.

On November 9, 1965, C. W. Shafer incorporated the sole proprietorship pursuant to the laws of the Territory of Hawaii under the corporate name "Shafer Company, Inc." New shareholders thereafter acquired interests in the corporation. On April 5, 1970, all of the then stockholders of Shafer Company, Inc. transferred their shares of common stock to the appellee, HOH Corporation (HOH), in exchange for shares of stock in HOH. The trial court found that a statutory merger thereafter took place between the old corporation and HOH with the surviving corporation as a newly-formed "Shafer Company, Inc."; and that the former Shafer Company, Inc. had "ceased to exist as a matter of law." Packard-Bell (the predecessor of Teledyne) was notified on May 12, 1970, of the statutory merger, with Shafer Company, Inc. becoming a wholly owned subsidiary of HOH.

On May 21, 1970, Shafer by letter requested the return of his personal guaranty and repeated the request orally on at least two subsequent occasions. The requests were refused. In answer to the written request Shafer was told that it was the "company policy" to obtain the personal guaranties of the principals as well as the corporate guaranty.[2] In answer to one of the oral requests he was told that he would have to wait until the account was "more current." The continuing guaranty was never returned.

---

1. Paragraph 9 of the instrument provided that "[a]ny married woman who signs this Guaranty hereby expressly agrees that recourse may be had against her separate property for all her obligations under this Guaranty."

2. An amendment to the complaint alleges that ". . . since November 26, 1971, [defendants Shafers and HOH] have owed Plaintiff the sum of $39,499.65. . . ."

Neither the pleadings, the exhibits or the affidavits make clear when the earliest portion of the debt was incurred, but it does seem clear that it was long after C. W. Shafer ceased doing business as a sole proprietorship on November 9, 1965. Appellants do not contend to the contrary.

On the basis of this continuing guaranty, Teledyne sought to collect $39,499.65 in alleged merchandising debts from the Shafers.[3] Appellant's contention is that the continuing guaranty executed by Mr. and Mrs. Shafer guaranteed the debts of the "business" irrespective of its type of legal organization, ownership, management, size or the essential nature of its operation. The principal cases upon which the appellants rely are D. N. & E. Walter Co. v. Zuckerman, 214 Cal. 418, 6 P.2d 251 (1931) and New York American Inc. v. Hub Advertising Agency, Inc., 136 Misc. 596, 240 N.Y.S. 367 (1930). In *Zuckerman,* a guarantor was held liable for the debts of a sole proprietorship after it was incorporated upon the ground that the corporation was the alter ego of the sole proprietor who owned all of the stock during the period in which the guaranteed obligation was incurred. Here, shortly after incorporation on November 9, 1965, other investors acquired stock and the essential nature of the business enterprise changed.[4] Shafer was no longer the holder of the majority of the shares issued and outstanding, even though he continued as the corporation's chief executive; moreover, as a guarantor the essential nature of his risk and his responsibility had changed. As an individual his personal financial risk was measured by whatever limitations he chose to effect and his own credit would support. With additional corporate capital for use in expanded operations, his liability became greatly expanded and his control diluted. Both he and his wife may well have declined to risk their personal fortunes to such an enlarged undertaking as guarantors of a corporate liability. Instead, they chose to operate as a corporation with personal liability limited to corporate investment. This permitted an expanded operation with limitations on risk to personal assets employed in the business. Shafer continued to operate as a corporation on a larger scale with the additional capital of new stockholders and then, by merger, became a subsidiary of HOH.

No fraud or misconduct is charged to Shafer in progressively enlarging and changing the character of the operation. His method of doing business was well known or could have been. The change of name and legal organization would have been readily apparent upon the checks of the business, reflected in the name and a matter of public record in the state.

New York American, Inc. v. Hub Advertising Agency, *supra,* relied upon by appellant is a case decided in the City Court of New York. It appears to be somewhat relevant but the facts stated are insufficient to determine its real materiality. No authorities are cited. The guaranty was on April 2, 1928; the incorporation of the three-man proprietorship was on July 19, 1928. What happened thereafter and when is not told. We do not find it authoritative. More to the point is Wheeling Steel Corp. v. Neu, 90 F.2d 139 (8th Cir. 1937), followed recently by Sherman Car Wash Equipment Co. v. Maxwell, 297 F. Supp. 712, 716 (E.D.Pa.1969). In *Wheeling Steel Corp., supra,* under a guaranty of goods sold to "Joseph Himmelspach" doing business as "J. Himmelspach Supply Company," the guarantor was held not liable for goods sold to

---

3. On May 22, 1970, HOH had executed a corporate guaranty of "any and all indebtedness of Shafer Company, Inc."

4. Other stockholders were:

| Date | Stockholder | No. of Shares |
| --- | --- | --- |
| 11/9/65 | C. W. Shafer | 3,050 |
| 5/9/67 | Elizabeth Baker | 305 |
| 9/1/68 | Walter Lau and Helen Lau | 150 |
| 9/1/68 | Jane Shafer | 155 |
| 10/1/68 | Kaemper, Barrett & Smoot | 1,914 |
| 10/1/68 | Earl Hotaling | 2,894 |
| 11/30/69 | Richard Rabbett | 1,200 |

a corporation of the same name organized several months after the guaranty was executed. Nor is this case controlled by section 128 of the Restatement of Security. That section applies to modifications of the contract and the conditions under which such a modification without the consent of the surety releases that surety. The difficulty here is more basic. Here there is not just a change in the character of the obligation, nor is its time or manner of payment that which is altered. The creditor here seeks to reach a different debtor, an entirely different legal entity than the original obligor. There is no question but that the Shafers, as original guarantors, remain liable for any unpaid obligations of the sole proprietorship. There never was a continuing guaranty executed by C. W. Shafer and Jane Shafer for Shafer Company, Inc., a corporation, either solely owned by Shafer or by him with other shareholders. The fact that they sought to retrieve the guaranty cannot enlarge their obligation simply because it suggests they believed they might have some liability under it. We therefore hold that the trial court properly granted the motion to dismiss of appellees, C. W. Shafer and Jane Shafer.

## II. *Teledyne's claims against HOH*

On April 5, 1970, in a statutory merger proceeding, HOH Corporation acquired all of the capital stock of Shafer Company, Inc. in exchange for shares of HOH. Shafer Company, Inc. had been in business as a corporation approximately five years; HOH was founded a little over seven years prior to the merger. On May 22, 1970, HOH executed its continuing guaranty of the indebtedness of Shafer Company, Inc. "heretofore, now, or hereafter made." Apart from the guaranty, the fact that Shafer Company, Inc. had become a wholly owned subsidiary of HOH did not alter its legal relationship with Teledyne (successor to Packard-Bell). Purchases continued to be made by Shafer Company, Inc. from Teledyne, and payments on account were made by Shafer Company to Teledyne. The franchise remained in the name of C. W. Shafer. At the time Shafer obtained the franchise he had entered into an agreement with Teledyne called a Distributor Profit Protection Agreement. Under the terms of that agreement, the distributor (Shafer) would pay into a fund established by the agreement one-quarter of one percent of his previous month's sales. Other franchise holders did likewise. The fund was held and administered by Teledyne. If a customer of the distributor failed to pay for merchandise sold and the account became uncollectible, the distributor could make a claim against the fund subject to availability of monies therein. In December of 1969, and prior to the merger, Shafer Company, Inc. had made claims against the fund aggregating $40,860.66. Teledyne had responded that funds were not then available to pay the claims. A dispute existed as to whether or not Teledyne had thereafter made oral promises to pay.

Efforts to settle the dispute were unsuccessful, and in a letter dated September 27, 1971, HOH's attorneys notified Teledyne that they had advised HOH to offset its $40,860.66 claim against the larger amount that HOH owed Teledyne as guarantor of Shafer Inc.'s trade debts. Accordingly, on October 1, 1971, HOH mailed Teledyne a check for $35,163.79 representing the difference between the "total payables" owed Teledyne and HOH's $40,860.66 claim against the Distributor Profit Protection fund. The reverse of the check bore a typed notation: "In full payment of all HOH trade obligations" and a brief accompanying remittance memorandum outlined the calculations upon which the check was based.

Teledyne's accounting department routinely endorsed and deposited the check and credited the sum to the Shafer Company's account as a partial payment. The language on the check and memorandum indicating the offest and suggesting an accord was not brought to the attention of the appellant until oral

conversations with HOH's attorneys nearly one month later. At this time Teledyne protested the attempted offset and demanded payment of $39,499.65, the balance of the merchandising debt.

Reviewing the above facts the lower court found that the acceptance and retention of HOH's check constituted an accord and satisfaction, barring further action by Teledyne for the balance of its claim. The court then granted HOH's motion for summary judgment.

Appellant appeals primarily on the grounds that (1) no bona fide dispute existed between HOH and the appellant sufficient to invoke the doctrine of accord and satisfaction; (2) appellant's accounting department lacked the authority to compromise HOH's claims, and therefore the cashing of HOH's check did not constitute an accord; and (3) Teledyne's subsequent protest and the totality of circumstances precluded a finding of the necessary "meeting of the minds" sufficient to support an accord and satisfaction.

 When a creditor accepts a check tendered as full satisfaction of a larger debt, the law under certain circumstances recognizes an accord and satisfaction which discharges the original obligation.[5] However, in order for this principle to apply, there must first be a "bona fide dispute" between the parties regarding the amount owed. Fire Insurance Association, Ltd. v. Wickham, 141 U.S. 564, 12 S.Ct. 84, 35 L.Ed. 860 (1891); Potter v. Pacific Coast Lumber Co. of California, 37 Cal. 2d 592, 234 P.2d 16 (1951); Kelly v. David D. Bohannon Organization, 119 Cal.App.2d 787, 260 P.2d 646 (1953).

Here, although the parties were in apparent accord as to the amount owed Teledyne on the Shafer merchandise account, a dispute existed as to the validity of HOH's claims against the Distributor Profit Protection fund. By the weight of modern authority, however, a disputed counterclaim or setoff is sufficient to render an entire transaction "unliquidated," and therefore subject to the application of accord and satisfaction. 1 Williston, A Treatise on the Law of Contracts § 129 (3d ed. 1957). It is unnecessary to examine the underlying merits of HOH's offset claim for " 'it matters not that there was no solid foundation for the dispute' as the test is whether 'the dispute was honest or fraudulent.' " Potter v. Pacific Coast Lumber Co. of California, 234 P.2d at 18. We merely note that the contention of HOH that it had a valid right of offset was supported by a letter of its attorney and we therefore cannot conclude that it was not bona fide. Teledyne submitted no information by affidavit or otherwise which would indicate that the position of HOH was not bona fide. Teledyne does, of course, dispute the right of offset.

 A second prerequisite of an effective accord and satisfaction is a tender by the debtor which gives the creditor adequate notice that a compromise is being proposed. " . . . [T]he debtor must make it clear that acceptance of what he tenders is subject to the condition that it shall be in full satisfaction." Potter v. Pacific Coast Lumber Co. of California, *supra* at 19; Avery v. Schuman Company, 159 F.Supp. 906 (S.D. Cal.1958). This requirement is particularly stringent where past practices be-

---

5. This being a diversity action, the court must apply the law of the forum, including its choice-of-law rules. Klaxon Co. v. Stentor Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L. Ed. 1477 (1941). In the absence of controlling Hawaiian authority, we look to the conflict-of-law rules generally applied by the courts of this country. Gates v. P. F. Collier, Inc., 378 F.2d 888 (9th Cir. 1967).

We accept appellant's arguments (uncontested by appellee, HOH) that application of

California law conforms with the expectations of the parties, as indicated by their contractual arrangements. Additionally we note that appellant's principal place of business was in California, and that the cashing of the checks and other acts alleged to constitute an accord occurred in that state. *See* Grayhill Drilling Co. v. Superior Oil Co., 39 Cal.2d 751, 249 P.2d 21 (1952).

tween the debtor and creditor have involved installment payments on the debt. In this situation the debtor bears the greater burden of demonstrating that the creditor received adequate notice that a given payment was tendered conditionally as final and not partial payment. Where this burden has not been met, the courts have refused to find an effective accord and satisfaction. Fire Insurance Association, Ltd. v. Wickham, 141 U.S. 564, 12 S.Ct. 84, 35 L.Ed. 860 (1891); Calloway v. Central Charge Service, 142 U.S.App.D.C. 259, 440 F.2d 287 (D.C.1971); Rivervalley Company v. Deposit Guaranty National Bank, 331 F.Supp. 698 (N.D.Miss.1971); Conderback, Inc. v. Standard Oil Co. of California, Western Operations, Inc., 239 Cal. App.2d 664, 48 Cal.Rptr. 901 (1966).[6]

■ In the present case, appellant argues that the circumstances surrounding HOH's tender of the check were not sufficiently unequivocal to put Teledyne on notice that an accord was being proposed. Appellant cites HOH's failure to direct the check to the Teledyne officials who were aware of the dispute and in a position to compromise the claim; HOH's failure to include an accompanying cover letter explaining the proposed payment; and finally, the inadequacy of HOH's remittance memo which non-descriptively referred to a "merchandise claim" deduction. In response, HOH contends that its letter of September 27, 1971,[7] plus the explicit language typed on the reverse of the check, provided sufficient notice. Although some authorities have charged a creditor with notice under similar circumstances, e. g.,

Minnesota & Ontario Paper Co. v. Register & Tribune Co., 205 Iowa 1228, 219 N.W. 321 (1928); Annot., 75 A.L.R. 905 (1931), it is unnecessary to decide this point. For Teledyne's subsequent and continuing refusal to repudiate and return the payment *after* full notice was brought home renders moot any deficiency of notice in the original tender.

■■ Because an accord and satisfaction is governed by general contract principles, Cline v. Zappettini, 131 Cal. App.2d 723, 281 P.2d 35 (1955); 6 Corbin, Contracts § 1277 (1962), there must be an effective acceptance of the compromise offer in order to discharge the original obligation. A subjective "meeting of the minds" is not required, as the creditor's acceptance of the check may be evidenced "actually or by implication." Besco Enterprises, Inc. v. Carole, Inc., 274 Cal.App.2d 42, 78 Cal.Rptr. 645 (1969); Hudson v. Yonkers Fruit Co., Inc., 258 N.Y. 168, 179 N.E. 373 (1932). Further, it is almost universally held that "[t]he cashing of the check or its certification is sufficient an act of dominion to constitute such acceptance." Besco Enterprises, Inc. v. Carole, Inc., 78 Cal.Rptr. at 646; Trask v. Shinn, 41 Haw. 374 (1956); Annot., 75 A.L.R. 905 (1931); 6 Corbin, Contracts § 1279 (1962). The appellant, however, argues forcefully that the routine processing of the check by its accounting department in ignorance of the alleged dispute did not constitute a legally effective "acceptance" binding on appellant. While some cases have taken a strict view rejecting a similar agency exception to the general rule, e. g., Minnesota & Ontario Paper

---

6. Neither party has considered the applicability of the Uniform Commercial Code to this transaction. On the facts, there is strong reason to doubt that section 1–207 is pertinent. Under the circumstances we do not find it appropriate to discuss it. *See* generally Hawkland, The Effect of U.C.C. § 1–207 on the Doctrine of Accord and Satisfaction by Conditional Check, 74 Commercial L.J. 329 (1969).

7. September 27, 1971, letter from attorneys for HOH addressed to Mr. Joseph F. An-

lauf, Jr., General Sales Manager of Teledyne Packard Bell, states:

"Accordingly, we have advised our client that the failure of Packard Bell to honor our client's claims was improper and in violation of the Agreement and the assurances of payment given to it. Inasmuch as our client owes Teledyne more than its claims of $40,860.66, we have advised that it is both proper and appropriate to offset its claims against the amount owed and to remit to Teledyne only the difference thereof." C.T. at 82.

Co. v. Register & Tribune Co., *supra,* the better view appears to be contra. Thus in Eckert-Fair Construction Co. v. Capitol Steel & Iron Co., 178 F.2d 338 (5th Cir. 1949), the Fifth Circuit held that where the creditor's auditing department cashed the defendant's check in ignorance of the disputed claim, a subsequent timely protest by the plaintiff defeated a finding of an accord and satisfaction. *See also* Road Improvement District No. 4 of Conway County, Ark. v. Wilkerson, 5 F.2d 416 (8th Cir. 1925).

■ While we concede that the cashing of the check by Teledyne's accounting department did not *per se* constitute an accord and satisfaction, this is not dispositive of the issue. For the record reveals that when the appellant was subsequently formally notified of the compromise tender, it nonetheless chose to ignore the conditional nature of HOH's payment. Instead, Teledyne protested the offset and informed HOH that it was treating the disputed tender as a partial payment on HOH's account. There is little disagreement among authorities, however, as to the legal effect of Teledyne's conduct. The view in California is particularly well settled: " . . . where there is an honest dispute as to the amount due on an obligation and the debtor sends a check in a certain sum as payment in full, *the retention and use of the check by the creditor will constitute an accord and satisfaction, even though he notifies the debtor that it is received only as a partial payment on account.*" Besco Enterprises, Inc. v. Carole, Inc., 78 Cal.Rptr. at 646 (emphasis added); Peters v. Lines, 275 F.2d 919 (9th Cir. 1960); Edgar v. Hitch, 46 Cal.2d 309, 294 P.2d 3 (1956); *see also* Trask v. Shinn, 41 Haw. 374 (1956); 15 Williston, A Treatise on the Law of Contracts § 1856 (3d ed. 1972). In Potter v. Pacific Coast Lumber Co. of California, 37 Cal.2d 592, 234 P.2d 16 (1951), the leading case on point, the California Supreme Court, fully considered the competing policy considerations and concluded:

"[W]here a claim is disputed or unliquidated and the tender of a check or draft in settlement thereof is of such character as to give the creditor notice that it must be accepted 'in full discharge of his claim' or not at all, the retention and use of such check or draft constitutes an accord and satisfaction . . . ; and it is immaterial that the 'creditor protests against accepting the tender in full payment' . . ., for in such case 'the law permits but two alternatives, either reject or accept in accordance with the condition.' [citations omitted]" 234 P.2d at 18.

In so holding, the court rejected the argument that this enabled a debtor who disputes "one small separable item of an invoice received in the regular course of business" to make "a remittance of an amount admittedly due," and seek "to have declared an accord and satisfaction because the creditor accepted what was concededly justly due him." Potter v. Pacific Coast Lumber Co. of California, 37 Cal.2d 592, 234 P.2d 16 (1951) (dissenting opinion adopting lower court holding). Instead, the court declared: " 'The law wisely favors settlements, and where there is a real and genuine contest between the parties, and a settlement is had without fraud or misrepresentation, for an amount determined upon as a compromise between the conflicting claims, such settlement should be upheld, although such amount is materially less than the amount claimed by the person to whom it is paid.' Post v. Thomas, 212 N.Y. 264, 106 N.E. 69, 72." Potter v. Pacific Coast Lumber Co. of California, 234 P.2d at 22.

Apart from the above policy consideration, the holding in *Potter, supra,* avoids the otherwise technically correct conclusion that the creditor is a converter when he retains the debtor's check in contravention of explicit conditions. "The court is in these cases faced with the alternative between holding that the creditor is a wrongdoer in cashing the check or using the money, and holding that his conduct is operative as an ac-

ceptance and is therefore not wrongful. The latter holding is a short cut to complete justice, protects the debtor against injury, and prevents unnecessary litigation." 6 Corbin, Contracts § 1279 (1962).

Finally, appellant argues that the conduct of the parties subsequent to the disputed payment precludes a finding of an otherwise present accord and satisfaction. To this end, appellant cites the telephone conversations between it and HOH's attorneys, where HOH's attorneys allegedly continued to press its claim against the protection fund, and indicated a willingness to make an additional payment. While some authorities have found such continuing negotiations to vitiate an earlier alleged accord and satisfaction, e. g., Southern Coal Co. v. Barnett, 279 S.W. 192 (Mo.App.1926), we believe the present California position is contra. In Potter v. Pacific Coast Lumber Co. of California, *supra,* the California Supreme Court found a valid accord and satisfaction notwithstanding the fact that the debtor continued to negotiate after the disputed tender and even made a second compromise offer. In reaching this conclusion the court reasoned:

> " 'An offer of compromise is not an admission that anything is due . . . .' Compromises are favored in law and a man is allowed to negotiate for the purchase of his peace without prejudice to his rights. Accordingly, none of these factors . . . can be said to have deflected from the positive position taken by defendant company in tendering the respective checks or drafts for acceptance in full discharge of the respective accounts, or from the consequences of plaintiff's cashing such checks and drafts upon that basis in establishment of an accord and satisfaction." 234 P. 2d at 20.

We therefore find the district court's holding sufficiently supported by the facts, and in accord with the law of California. Motion for summary judgment was properly granted.