Gerald F. KROON, Plaintiff,

v.

Lloyd R. MAXWELL and Caroline Maxwell, Defendants.

Civ. A. No. 36134.

United States District Court
E. D. Pennsylvania.

March 17, 1969.

Harry A. Rutenberg, Philadelphia, Pa., for plaintiff and third-party defendants.

Tom P. Monteverde, Philadelphia, Pa., for defendants and third-party plaintiffs.

## OPINION

KRAFT, District Judge.

This is an action upon a promissory note. The plaintiff, a New Jersey citizen, is assignee of the note.

Defendants Lloyd R. Maxwell and Caroline, his wife, citizens of Pennsylvania, are two of the makers of the note in suit. This instrument, in the face amount of $50,000, was originally executed in favor of the Cinnaminson Bank and Trust Company of Riverton, New Jersey (now known as the Garden State Bank), on or about December 31, 1962, by Maxwell Sales & Engineering Company [1] (Maxwell Sales), Sherman Car Wash Equipment Company [2] (Sherman) and Lloyd R. Maxwell, Caroline Maxwell

---

1. A Delaware corporation, with its principal place of business located in West Chester, Pennsylvania. This company, incorporated in 1961, manufactured and sold dynamometers until 1965, when it became involved in involuntary bankruptcy proceedings. A dynamometer is a mechanical device designed to measure horsepower.

2. A Michigan corporation with its principal place of business located in Palmyra, New Jersey.

and F. William Thacher, Jr.[3], individually. Lloyd R. Maxwell is President and Caroline Maxwell, his wife, is Secretary of Maxwell Sales, F. William Thacher, Jr. is President and Bette Belle Thacher, his wife, is Secretary of Sherman.

In their suggested findings and brief defendants and third-party plaintiffs, raise several defenses to the main action:

1. At the time plaintiff acquired the note Maxwell Sales had a valid claim of $89,000 against the bank for unauthorized withdrawals which the bank permitted the plaintiff to make from Maxwell Sales' checking account.

2. The signatures of the Maxwells to the note were procured by fraud perpetrated by plaintiff Kroon and Thacher.

3. Kroon is merely the nominee of Thacher and Sherman and no attempt was ever made to secure payment of or to reduce the amount of the note by selling the equipment and Heintz stock which secured the note.

4. As third-party plaintiffs, the Maxwells claim they are entitled to indemnity from Sherman and Thacher because Sherman is the prime surety and Thacher is sub-surety. It is alleged that Thacher assured the Maxwells that they were signing the note only as accommodation parties and that they need not concern themselves about personal liability. They allege that they were induced to execute the note by the fraudulent misrepresentations of Thacher and Kroons as agents for Sherman with respect to the reasons which gave rise to the loan. They further allege that Sherman received the primary benefit of the loan.

It was stipulated by counsel for Thacher and Sherman that in the event the plaintiff is successful in his cause of action against the Maxwells, Thacher and Sherman are liable for their share of *contribution*.

A threshold question is presented by defendants' defense and third-party claim raising the issue of alleged fraud by Kroon and Thacher. In their answer, third-party complaint, pre-trial memorandum or at trial, the defendants failed to assert the defense of fraud. Moreover, during the trial, when the Court granted third-party plaintiffs leave to amend their complaint, no application was made to plead the alleged fraud of Kroon and Thacher.

 Under Rule 8(c) fraud is an affirmative defense, which is waived if not pleaded or made the subject of an appropriate motion under Rule 12(h). "The waiver is final if the defendant fails to correct the omission either prior to trial or during trial as permitted by Rule 15(a) (b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Ibid." Systems, Inc. v. Bridge Electronics Co., 335 F.2d 465, 466 (3 Cir. 1964).

We must dwell at some length on the provisions of the note, the negotiations and the business operations of the parties to this litigation to provide an adequate understanding of all the circumstances attending this matter.

Thacher was a director of the Cinnaminson Bank in 1962 when he applied to the bank for the loan in the name of Maxwell Sales. The bank regarded the application as one for a loan to "a director's corporation." Consequently, the bank agreed to make the loan only if Thacher's stock in Heintz Manufacturing Company was assigned as collateral security and if Sherman and the three directors of Maxwell Sales (the Maxwells and Thacher) signed the note, as well as the applicant, Maxwell Sales.

The note recites that the following property was deposited as collateral se-

---

3. Thacher was also Treasurer of Maxwell Sales until he has discharged by Lloyd R. Maxwell on October 19, 1963. While so employed, Thacher exercised complete control and dominion over the records and financial affairs of Maxwell Sales.

curity for the payment of the obligation:

"Chattel Mortgage in the amount of Fifty Thousand Dollars (50,000) dated December 27, 1962, to Cinnaminson Bank and Trust Company, and intended to be forthwith recorded in the office of the Clerk of Burlington County.

"4625 shares of Class B Common Stock of Heintz Manufacturing Co., Inc."

The chattel mortgage covered the manufacturing equipment of Maxwell Sales, which Thacher represented to the bank had a sound insurable value of approximately $55,000 and a replacement cost of approximately $87,000 based upon a detailed formal appraisal made in October, 1962.

The Heintz stock is personally owned by Thacher. In 1962 it had a book value of $87,000, but had no readily ascertainable market value because it was an unlisted security.

In applying for the loan, Thacher represented to the bank that the proceeds would be used to enable Maxwell Sales to pay off an obligation which it owed to Sherman, which in turn, would use the funds to reduce a debt which Sherman then owed the Central Penn Bank of Philadelphia.

Maxwell Sales then owed Sherman about $40,000, which Sherman had advanced to Maxwell Sales from the time of its incorporation in 1961 until December 30, 1962. Lloyd R. Maxwell had been led to believe by plaintiff[4] and Thacher that the advances came from loans obtained from Cinnaminson Bank, which were secured by an interest in certain completed dynamometers that had been placed in bonded warehouses. Kroon admitted that these unusual bookkeeping procedures were employed because Maxwell had previously sold to other buyers some of the dynamometers which had been invoiced to Sherman as

security for loans made by Sherman to Maxwell Dynamometer Company.[5] Kroon and Thacher apparently thought that if Maxwell was induced to believe that the Cinnaminson Bank was advancing the funds to Maxwell Sales secured by the Dynamometers, Maxwell Sales would be reluctant to impair the security of the bank.

The Maxwells were never informed of such bookkeeping practices by the plaintiff, Thacher or Sherman until after the termination of the parties' business relationships, which culminated in the present litigation, in 1964.

Thacher discussed the proposed loan with the Maxwells and advised them that their signatures were needed on the new note, but that they would be accommodation parties only. He assured the Maxwells that the note was more than adequately secured by the manufacturing equipment of Maxwell Sales and his (Thacher's) Heintz stock, so that no personal liability could possibly accrue to them as a result of their execution of the note.

Thacher testified that he did tell the Maxwells that the manufacturing equipment would be liquidated before any demand would be made upon the Maxwells, himself or the companies. He denied, however, that he ever said that his Heintz stock would also be liquidated before any individual liability would be asserted on the subject note. We give no credence to and reject this denial, which we find to be motivated by Thacher's self-interest.

That the bank required the additional collateral security of Thacher's Heintz stock before making the loan is uncontradicted. This was a prime, inducing factor in causing the bank to grant the loan. The loan was made on application by Thacher and upon the strength of Maxwell Sales' stock, Thacher's stock and the signatures of Thacher, as president of Sherman and as an individual. The

---

4. Gerald Kroon was Sherman's comptroller and assistant secretary during the period 1961 through 1963.

5. Predecessor company to Maxwell Sales.

bank had favorable financial statements from Sherman and Thacher, but never requested financial statements from the Maxwells and made no credit investigation of them.

Hence, we find it wholly credible, and in harmony with the circumstances attending the negotiations for the loan, that Thacher did represent to the Maxwells that they would have no individual liability on the note in the event of a default.

When the proceeds of the $50,000 loan were deposited in the checking account of Maxwell Sales, Kroon withdrew $39,-918.05 from the Maxwell Sales' checking account and paid that sum to Sherman to clear its loan account with Maxwell Sales. Kroon made the withdrawal by filling in one of a group of blank checks, which Mr. Maxwell had signed in blank and left with Kroon to be used while he was on a business trip. Kroon then caused entries to be made on the books of Maxwell Sales to indicate that the check in question had been used to repay the existing indebtedness of Maxwell Sales to Sherman, but which the Maxwells had been induced to believe had been owed to the bank.

Prior to this transaction both Kroon and *Maxwell Sales* had engaged in a practice of withdrawing funds unilaterally from Maxwell Sales' checking account by wire transfer rather than by check, which was contrary to the resolution of Maxwell Sales deposited with the bank when the account was open which required two signatures on all checks by certain designated officers[6] of Maxwell. Sherman also made several deposits in the Maxwell Sales' account in March, 1963 for $13,000 and May, 1963 for $20,000.

This informal course of conduct pursued by Kroon *and Maxwell Sales,* with regard to Maxwell Sales' checking account, contrary to the terms of the corporate resolution, waived any claim that Maxwell Sales may have had against the bank for permitting Kroon to withdraw corporate funds without checks signed as well by either Mr. or Mrs. Maxwell.

The note, with interest at 5½% per annum, was payable in successive monthly installments of $1,509.81 commencing February 1, 1963, the last payment to be made not later than January 1, 1966. Maxwell Sales made the monthly payments up to October 19, 1963. The payments for November and December, 1963 and January, 1964 were made with the proceeds of notes given to Maxwell Sales by a customer named Bersanti, which notes were endorsed by Maxwell Sales and delivered to Thacher, who, in turn, delivered them to the bank for collection.

The note became in default on February 1, 1964 and Sherman, after demand by the bank, remitted five monthly payments to the bank. The bank later accepted a new note from Sherman and Thacher on June 8, 1964, for $34,238.96, the amount of the note at the time of default, and then applied the five payments previously made by Sherman to the balance of the new note, along with a suspense account of $5,448.80 which reduced the balance of the new note to $21,837.58, *according to the bank's president, John C. Brogan.* Thereafter, Sherman *alone* made payments on the note and reduced the balance to $4,460.68 as of January 1, 1968.

After receiving the new note, the bank, at Sherman's request assigned the original note to the plaintiff, Kroon. The bank also assigned to Kroon the chattel mortgage, but released Thacher's stock. Kroon took title to the chattel mortgage and the note as Sherman's nominee. Thereafter, in June, 1964, Sherman, in Kroon's name, instituted foreclosure proceedings in New Jersey on the chattel mortgage, which was resisted by Maxwell Sales. Judgment was obtained without notice to the Trustee in Bankruptcy of Maxwell Sales on October 11,

6. Lloyd R. Maxwell or Caroline Maxwell and either F. W. Thacher, Jr., or C. N. Smith, Jr.

1965.[7] The mortgaged property was not sold and Kroon permitted Sherman to obtain control of all of the equipment that had been subject to the chattel mortgage, some of which was then abandoned to the landlord of the building in which the equipment was stored. Several small items were also abandoned to another party. One large machine was appropriated by Sherman and the balance of the equipment has never been sold.

It is thus evident that the parties conducted their business affairs in an informal and most unorthodox manner. The corporations were purportedly separate and distinct entities, but were operated virtually as one company.

By reason of the inability of Sherman and Maxwell Sales to obtain prompt and adequate financing from banks, Sherman was forced to resort to factoring its accounts receivable. This also became prohibitive. As a result of this financial crisis, Thacher, desperate to relieve the situation, was obliged by the bank to secure personally the $50,000 loan with his Heintz securities and his individual guarantee. In order to persuade the Maxwells to sign the note, as requested by the bank, he assured them no personal liability would be entailed.

■ Accordingly, after careful review of all the evidence, we find that the defendants are liable to the plaintiff upon the note for the sum of $34,238.96.[8] We further conclude that, in the third-party action, Sherman and Thacher are liable to indemnify the defendants (third-party plaintiffs) for any and all sums which the Maxwells are liable to pay the plaintiff by reason of his recovery on the note.

■■ We reach our conclusion in the original action because the note on its face bears the unrestricted endorsements of the individual defendants and was assigned for value to the plaintiff. Though Kroon is the nominee of Sherman, he is the legal holder[9] of the note and entitled to sue and recover upon the obligation.

■ The original note, in its next to last paragraph, permitted the bank to transfer the securities "or any part thereof, to the transferee * * *" and did not require the bank to liquidate all the collateral. Thus, the failure of the bank to sell the Heintz stock was not a violation of any provision of the note and did not confer any right on the Maxwells to compel the liquidation of the stock.

■ Our decision in the third-party action is compelled by the credible evidence which we accept which discloses that Thacher guaranteed to the Maxwells that they would not be liable on the note from which they received no benefit. Thacher's oral contract of indemnity is binding and the statute of frauds and parol evidence rule are inapplicable, Restatement, Security § 146.

■ " * * * 'The true relation as between themselves of parties liable on a note may be shown by *oral evidence* in actions between them to determine their respective obligations.' * * *" Ruckdeschel et al, Exrs. v. Howell, 337 Pa. 517, 523, 12 A.2d 62, 65 (1940). The foregoing opinion constitutes the Court's findings of fact and conclusions of law, required by F.R.Civ.P. 52(a).

---

7. On May 18, 1965 the equipment was inspected and valued by J. R. Middleton, who was employed by Delta Equipment Company. Mr. Middleton found the equipment to be quite old and antiquated in design and not in attractive condition to stock. He placed a total retail sales value upon all the equipment of $2,120.00.

8. Plus interest and attorney's collection fee.

9. Obviously, Kroon is not a holder in due course since he took the note with knowledge that it was overdue and in default. He was also acting as the nominee of Thacher and Sherman merely to cut off any defenses that the Maxwells had against Thacher and Sherman. 12A P.S. § 3–302; 12A N.J.S.A. § 3–302.

## ORDER

NOW, this 17th day of March, 1969, it is ordered that:

1. In the original action judgment will be entered in favor of the plaintiff, Gerald F. Kroon, against Lloyd R. Maxwell and Caroline Maxwell, his wife, for $34,238.96, plus lawful interest and attorney's collection fee;

2. In the third-party action judgment will be entered in favor of third-party plaintiffs against the Sherman Car Wash Equipment Company and F. William Thacher, Jr. for all sums which the third-party plaintiffs are required to pay to satisfy the judgment against them in favor of Gerald F. Kroon.