SHERMAN CAR WASH EQUIPMENT CO., Plaintiff,

v.

Lloyd R. MAXWELL and Caroline Maxwell, Defendants and Third-Party Plaintiffs,

v.

MAXWELL SALES & ENGINEERING CO., and F. William Thacher, Jr., Third-Party Defendants.

Civ. A. No. 36133.

United States District Court
E. D. Pennsylvania.

March 17, 1969.

Michael J. Rutenberg, Philadelphia, Pa., for plaintiff.

Tom P. Monteverde, Philadelphia, Pa., for defendants and third-party plaintiffs.

## OPINION

KRAFT, District Judge.

This is a suit against the defendants [1], who are two of three guarantors upon a written guaranty agreement. The third guarantor is F. William Thacher, Jr.[2], who is president of the corporate plaintiff and was formerly treasurer and one of the directors of Maxwell Sales and Engineering Company, (Maxwell Sales).

In our opinion filed contemporaneously in a companion action (Kroon v. Maxwell, D.C., 297 F.Supp. 277), the identities and relationships of the parties and the corporations involved are fully set forth and are now incorporated herein.[3]

The plaintiff seeks to recover $168,569.09 from the defendants under the guaranty agreement. That sum is the combined total of the following three accounts: $38,469.70 owed Sherman by Maxwell Sales on a loan account; $22,239.21 owed Sherman by Maxwell Sales on a purchase account; $107,860.18 owed Shermax Corporation [4] by Maxwell Sales under a manufacturing agreement, which debt was assigned by Shermax to Sherman on December 16, 1963.

The defendants, at trial, chose not to controvert the fact, that as of June 30, 1964, immediately prior to the filing of this complaint, Maxwell Sales was indebted to Sherman in these amounts and upon these accounts.

The defendants, however, do dispute the application of the guaranty to these accounts and contend that: (1) the guaranty was not intended to cover any indebtedness owed by Maxwell Sales to Sherman other than those accounts receivable which Maxwell Sales factored through Sherman and which, in turn, Sherman factored through Standard Factors Corporation (S.F.C.); (2) since S.F.C. insisted that Sherman obtain the individual guarantees of the Maxwell directors to Sherman, the guaranty must be interpreted to reflect the actual intention of the parties; (3) if Sherman and Thacher covertly intended the guaranty to cover the existing indebtedness of Maxwell Sales to Sherman, the guaranty was procured from defendants by fraud; (4) the guaranty does not cover Shermax accounts, because Shermax was not in existence nor was its incorporation contemplated on April 30, 1962, the date the guaranty was executed, nor was the guaranty intended to cover indebtedness of Maxwell Sales to other creditors to whom Sherman might succeed by assignment; (5) in any event, if Sherman prevails in this action, it must give the defendants a credit of $64,857.82 for the conversion of Maxwell Sales' inventory.

Thacher, by his counsel, has stipulated that, in the event of a recovery by Sherman against the defendants, Thacher shall be liable for his pro-rata share of contribution.[5]

1. The defendants, husband and wife, are, respectively, president and secretary of Maxwell Sales.

2. Defendants in their third-party action seek contribution from Thacher.

3. Counsel stipulated in this action that all testimony and evidence concerning the identity of the parties contained in Kroon v. Maxwell, D.C., 297 F.Supp. 277 should be admitted in this action.

4. A wholly-owned subsidiary of Sherman which was incorporated in July, 1962, and manufactured dynamometers for Maxwell on a no profit, no loss basis until November, 1963. Thacher is also president of this corporation.

5. Maxwell Sales is also named as a third-party defendant, but has been adjudicated a bankrupt.

Plaintiff asserts that the broad language of the guaranty agreement [6] covers not only the factoring of the accounts receivable but, as well, " * * the due payment of all other obligations which said Maxwell Sales and Engineering Company may at any time owe to said Sherman Car Wash Equipment Company, however created."

To the defenses interposed by the defendants, plaintiff replies that the agreement cannot be reformed or interpreted,

6.

## GUARANTY

In order to induce SHERMAN CAR WASH EQUIPMENT COMPANY to enter into a certain Assignment and Agreement with MAXWELL SALES AND ENGINEERING COMPANY, dated April 30th 1962, and in consideration thereof and of other good and valuable considerations, receipt whereof is hereby acknowledged, the undersigned and each of them jointly and severally guarantee the due payment and performance by said MAXWELL SALES AND ENGINEERING COMPANY of all moneys to be paid, and all things to be done, pursuant to each and every condition and covenant contained in said Assignment and Agreement, or in any supplement thereto, or in any instrument given in pursuance thereof; as well as the due payment of all other obligations which said MAXWELL SALES AND ENGINEERING COMPANY may at any time owe to said SHERMAN CAR WASH EQUIPMENT COMPANY, however created.

The undersigned agree: that this guarantee shall not be impaired by any modification to which the parties to said Assignment and Agreement may hereafter agree, nor by any modification, release or other alteration of any of the obligations hereby guaranteed or of any security therefor, to all of which the undersigned hereby consent; that their liability hereunder is direct and unconditional, and may be enforced without requiring SHERMAN CAR WASH EQUIPMENT COMPANY first to resort to any other right, remedy or security; and that this guarantee shall continue in force until SHERMAN CAR WASH EQUIPMENT COMPANY shall receive written notice, by registered mail, revoking it as to future transactions.

The undersigned waive: notice of acceptance hereof; the right to a jury trial in any action hereunder; presentment and protest of any instrument, and notice thereof; notice of default; and all other notices to which they might otherwise be entitled. They hereby assign to SHERMAN CAR WASH EQUIPMENT COMPANY all homestead or exemption rights to which they may be entitled under the laws of any State, and all claims of any nature which they, or any of them, may now or hereafter have against SHERMAN CAR WASH EQUIPMENT COMPANY.

This Guaranty, all acts and transactions hereunder, and the rights and obligations of the parties hereto, shall be governed, construed and interpreted according to the laws of the Commonwealth of Pennsylvania.

IN WITNESS WHEREOF, we have signed and sealed these presents this 30th day of April 1962.

/s/ Lloyd R. Maxwell
_____
Lloyd R. Maxwell

_____
Address

/s/ Howard E. Dartoss
_____
Witness
2357 Hilcrest Ave.
Pennsauken, N. J.
_____
Address

/s/ Caroline Maxwell
_____
Caroline Maxwell

_____
Address

/s/ F. William Thacher, Jr.
_____
F. William Thacher, Jr.

because there has been no mutual mistake of fact; further, that there was never a sale of the inventory to the plaintiff as required by the law of contracts and that the alleged sale is void on its face as in violation of the Statute of Frauds.

■ Plaintiff argues that, since the guaranty is clear and unambiguous on its face, parol evidence is inadmissible to vary its terms. With this general proposition of law, we are in accord. However, the conduct of Sherman and Thacher prior to, at the time of, and after the execution of this guaranty on April 30, 1962, contradicts and conflicts with the otherwise clear language of the guaranty and requires this Court to examine all of the circumstances attending the execution of the agreement.

■ Before April 30, 1962 both Sherman and Thacher deliberately and falsely induced the Maxwells to believe that the loan account represented money actually borrowed by Maxwell Sales from the Cinnaminson Bank. On the day of execution of the guaranty the balance due on the loan account was $37,772.23. After the guaranty was executed neither Sherman nor Thacher ever disclosed the true facts to the Maxwells, who were permitted to continue to believe the earlier false representations.

In this posture, though defendants were so induced to and did believe Maxwell's debt was owed to Cinnaminson Bank we are asked by plaintiff to find that this guaranty was executed by the Maxwells with full knowledge that it applied to past debts actually owed by Maxwell Sales to Sherman, which plaintiff had falsely represented to defendants to be debts due by Maxwell Sales to Cinnaminson Bank. This was accomplished by Thacher who, as treasurer of Maxwell Sales, had complete charge of the corporation's financial records, which were maintained by Sherman's employees under Thacher's supervision.

The Maxwells reposed their complete trust and confidence in Thacher's handling of the financial affairs of Maxwell Sales, because he was far more experienced than they in fiscal matters. By reason of this trust and the relationship among the corporations and the parties, a fiduciary relation existed between Thacher and Sherman on the one hand and the Maxwells on the other, which was breached by Thacher's intentional deception.

Plaintiff regards this concealment [7] as immaterial, since the opening balance of $37,772.23 was eventually reduced to zero and the present balance of $38,469.70 concerns loans made after April 30, 1962. Such procrustean logic eludes us and we find that, by its practiced deception, plaintiff dealt unfairly with the defendants and intentionally concealed from them material facts necessary for them to make an intelligent decision to bind themselves on the guaranty. Accordingly, we hold plaintiff is not entitled to the broad interpretation of the guaranty which it now seeks.

The guaranty, signed on April 30, 1962, was executed contemporaneously with a factoring agreement between Sherman and Factors Corporation of America (now known as Standard Factors Corporation, S.F.C.) of the accounts receivable of Sherman, which were all Maxwell Sales' accounts. On the same date, Maxwell Sales executed an identical factoring agreement with Sherman, because S.F.C. would not factor Maxwell Sales' accounts directly. Maxwell Sales assigned to Sherman, all of its accounts receivable by an assignment and agreement, also dated April 30, 1962.

The guaranty signed by the Maxwells and Thacher was procured at the insistence of S.F.C. The language of the

7. Defendants pleaded such concealment in their fourth defense contained in their answer as amended. Leave to file the amendment was granted by the Court at trial. " * * * Concealment is itself indicative of fraud, and, if unexplained, establishes a presumption of fraud which its author must rebut or bear the consequences." Weiskircher v. Volk, 29 Pa. Super. 611, 614 (1905).

guaranty is very closely similar to the guaranty included in the printed form prepared and supplied by S.F.C.

The only reason for this factoring arrangement with S.F.C. was to overcome the difficulties encountered by Maxwell Sales in obtaining commercial credit. All of the agreements are inextricably intertwined and strongly support the defendants' contention that it was the mutual intention of the parties that the guaranty apply only to the factored accounts.

While Thacher testified that this was not his intention nor Sherman's (of which he was then, and still is, President), we have concluded, as in the companion case, that Thacher's testimony was motivated by self-interest and is unworthy of belief.

The conduct of Thacher and Sherman belies their denials. Sherman, with Thacher's permission, wrote off, as *worthless* as of June 30, 1964, all of the claims asserted in this action. This was done to secure tax benefits for worthless debts. Despite Thacher's apparent affluence, Sherman never attempted to collect the debts from Thacher, who owned a majority of Sherman's stock. Thacher never made any payment on the guaranty, nor did he show any liability to Sherman on this guaranty in a financial statement which he issued on July 30, 1965.

In this regard, actions may speak even louder than *printed* words in guaranty contracts. All of the foregoing facts, which find ample support in the great weight of all the credible evidence, fully substantiate defendants' position.

Upon all the Maxwell Sales' accounts, factored through Sherman to S.F.C., Sherman sustained a loss of only $2,975.-75. This loss occurred when a customer's check, forwarded by Sherman to S.F.C., was worthless and Sherman reimbursed S.F.C., which had advanced funds to Sherman on the basis of the check. There is no evidence that Sherman made any remittance to Maxwell Sales before Sherman was obliged to repay S.F.C.

We also conclude that the Shermax accounts are not covered by the terms of the guaranty, because Shermax was not in existence nor was its incorporation contemplated at the time of the execution of the guaranty. The subsequent assignment from Shermax to Sherman, executed by Thacher on December 16, 1963, was not retrospective to April 30, 1962, to bring the Shermax debts within the scope of the intention of the parties at the time of the execution of this guaranty.

Thus, in Wheeling Steel Corporation v. Neu, 90 F.2d 139 (8th Cir. 1937), it was held that, under a guaranty of goods sold to "Joseph Himmelspach," doing business under the trade name "J. Himmelspach Supply Company," the guarantor was not liable for the purchase price of goods sold to a corporation, "J. Himmelspach Supply Company," organized several months after the guaranty was executed. In this connection, the Court of Appeals stated (at p. 140):

"* * * The contract of guaranty in suit is clear, complete, and unambiguous. * * * It did not cover the purchase price of goods sold by the plaintiff to a corporation, a separate and distinct legal entity organized months after the guaranty was executed. It is certain that on September 10, 1928, the minds of the parties could not have met upon the proposition that the defendant was to be liable to the plaintiff for the purchase price of goods sold by it to the corporation formed by Joseph Himmelspach in April 1929. Under the circumstances, the mere opinion of either or both parties as to the meaning of the guaranty is not controlling."

This case and its companion action, present a disgusting example of the perversion of the corporate form of business organization. Thacher, operating in his dual role as president of Sherman and treasurer of Maxwell Sales, had complete dominion and control over the latter's financial records and manipulated its affairs to suit his own advantage

and Sherman's. Fiduciary duty was breached by Thacher in his efforts to obtain financial capital to operate Sherman and Maxwell Sales. The record is replete with deception, evasion and unfairness. Notwithstanding this, the Court is asked to close its eyes and compound the injustice by a literal enforcement of the guaranty agreement. This we decline to do.[8] Accordingly, we enter the following

## ORDER

Now, this 17th day of March, 1969 it is ordered that:

1. The foregoing opinion constitutes our findings of fact and conclusions of law, as required by F.R.C.P. 52(a).

2. Judgment is entered in favor of the defendants Lloyd R. Maxwell and Caroline Maxwell against the plaintiff Sherman Car Wash Equipment Company.

3. By reason of the above judgment, the third-party complaint is hereby dismissed.

8. Since we have concluded that defendants are entitled to judgment, we express no opinion on the defendants' claim of setoff for the inventory.