**MASSEY–FERGUSON, INC.**

v.

**FINOCCHIARO EQUIPMENT CO., INC.**
**and Anthony R. Finocchiaro.**

**Civ. A. No. 76–346.**

United States District Court,
E. D. Pennsylvania.

Aug. 12, 1980.

---

Arnold P. Borish, Philadelphia, Pa., for plaintiff.

Norman M. Abrams, Jenkintown, Pa., for defendants.

## OPINION

LUONGO, District Judge.

On January 21, 1977, judgment was entered for plaintiff, Massey-Ferguson, Inc.,

against defendant, Anthony R. Finocchiaro, on a jury verdict in the amount of $188,-783.34. Massey-Ferguson subsequently initiated efforts to satisfy its judgment. *See generally* Fed.R.Civ.P. 69(a). In the latter part of August 1979, plaintiff secured a writ of execution against real property that had been held at one time by defendant and his wife Marion as tenants by the entireties, but which had been conveyed to their daughter Marilyn after the entry of judgment in this case. Marilyn Finocchiaro, the record owner and garnishee of the property upon which Massey-Ferguson has levied, now moves to quash the writ of execution.

The garnishee argues that because the property to which she now holds title had been owned by her parents as tenants by the entireties, it was never subject to execution by a judgment creditor of her father individually. She contends that her parents could therefore dispose of the property as they wished, that the transfer to her was proper, and that her father has no present attachable interest in the property. Massey-Ferguson premises its assertion that the levy is proper on two theories. It first invokes the Uniform Fraudulent Conveyance Act, 39 Pa.Stat.Ann. §§ 351–363 (Purdon 1954), arguing that a guaranty executed by Marion Finocchiaro created a contingent liability in her for the debt which Massey-Ferguson seeks to collect; that under the Act the status of the Finocchiaros as judgment and contingent debtors, respectively, renders the transfer to their daughter fraudulent; that Finocchiaro became sole owner of the property on the death of his wife; and that the property may be attached by Massey-Ferguson to satisfy its outstanding judgment. In the alternative, Massey-Ferguson attacks the transfer to the garnishee as a sham.

A hearing was held in this matter on July 2, 1980, to resolve these various issues. After review of the exhibits entered into evidence during the hearing and my handwritten notes of the testimony adduced, and upon consideration of the memoranda and requests for findings submitted by the parties, I conclude that the property is properly subject to execution and that the garnishee's motion to quash the writ must be denied.

## I. *THE FACTUAL BACKGROUND*

The subsidiary facts in this case are largely undisputed, although the parties do vigorously contest the inferences to be drawn therefrom. In early January 1977, defendant's sole proprietorship, Finocchiaro Equipment Company (FECO), became an authorized dealer of industrial and construction machinery manufactured by plaintiff. Stipulation (Doc. No. 63) ¶ 2. On February 6, 1968, defendant and his wife executed a guaranty of FECO's obligations to plaintiff. Plaintiff's Exhibit No. 3. At that time, the Finocchiaros owned four parcels of real estate in Philadelphia. Stipulation (Doc. No. 63) ¶ 13.[1] FECO subsequently entered into a distributorship agreement with Massey-Ferguson, which became effective on October 15, 1970. Plaintiff's Exhibit No. 5. Shortly after FECO undertook the distribution of Massey-Ferguson construction machinery, defendant incorporated his business, transferring all assets and liabilities of FECO to Finocchiaro Equipment Company, Inc. (FECO, Inc.). Plaintiff's Exhibit No. 9 (Complaint ¶ 11). Mrs. Finocchiaro's apprehension about the broadened scope of the business resulting from the distributorship undertaking provided the impetus for incorporation. Defendant was the president and sole shareholder of FECO, Inc.

FECO, Inc., then entered into an industrial machinery dealer sales agreement with Massey-Ferguson, which became effective on March 31, 1971. Plaintiff's Exhibit No. 6. On April 9, 1974, defendant executed a document personally guaranteeing all obligations of FECO, Inc., to Massey-Ferguson. Plaintiff's Exhibit No. 7. On April 10, 1974, FECO, Inc., entered into an industrial machinery dealer sales agreement with an effective date of April 15, 1974, and signed a

---

1. These properties are located at 8675–77 Torresdale Avenue, 8679 Torresdale Avenue, 832 North 65th Street, and 417 North 62nd Street.

rental fleet financing and security agreement. Plaintiff's Exhibit No. 9 (original complaint with attached exhibits). During the period from October 30, 1970, to May 3, 1974, Massey-Ferguson's invoices reflect the sale of machinery to FECO, rather than FECO, Inc. Plaintiff's Exhibits Nos. 2, 4. The first invoice directed to FECO, Inc., bears the date July 31, 1974. Plaintiff's Exhibit No. 2, Invoice # 403279.

In December 1975, plaintiff's counsel advised defendant of Massey-Ferguson's intention to institute legal action to recover the balance owed on outstanding invoices from plaintiff to FECO and FECO, Inc. Plaintiff's Exhibit No. 8. Plaintiff filed suit against Finocchiaro and FECO, Inc., on February 5, 1976, and on January 27, 1977, obtained a judgment against Finocchiaro in the amount of $188,783.34. Plaintiff's Exhibits Nos. 9, 10 (copies of complaint and judgment order). After unsuccessful attempts to refinance the Torresdale Avenue properties both prior to and after the entry of judgment in this action, see Plaintiff's Exhibit No. 12, defendant filed a voluntary petition in bankruptcy on July 21, 1977, in which he sought to discharge the debt to Massey-Ferguson. Plaintiff's Exhibit No. 11. While the bankruptcy proceeding was pending, defendant and his wife conveyed their four Philadelphia properties to the garnishee, who recorded her deed on March 21, 1978. Stipulation (Doc. No. 63) ¶¶ 13, 14. The conveyance was without consideration. See note 3 infra. Approximately two months later, on May 25, 1978, defendant's wife died. Stipulation (Doc. No. 63) ¶ 15. Defendant again attempted to refinance the Torresdale Avenue properties in mid-1978, but was refused because he did not hold title. Plaintiff's Exhibit No. 12. On November 27, 1978, the bankruptcy court entered an order, on stipulation by the parties, that defendant's debt to Massey-Ferguson was nondischargeable. Plaintiff's Exhibits Nos. 15, 16 (copies of stipulation and order). In early 1979, plaintiff stepped up its efforts to satisfy the judgment, and in October 1979, served upon the garnishee the writ of execution that she now moves to quash. Doc. Nos. 50, 54.

## II. *THE VALIDITY OF THE WRIT*

As I have already noted, plaintiff advances essentially two arguments in justification of the writ. First, Massey-Ferguson contends that the transfer of the properties is a fraudulent conveyance. Second, plaintiff suggests that the transfer was a sham and that defendant is, in fact, the owner of the property.

### A. *A Sham Transfer*

The second theory, which was raised only in plaintiff's concluding argument at the hearing on this matter and which is not specifically addressed in plaintiff's post-hearing submissions, merits just a brief mention. Massey-Ferguson pegs its argument that defendant is the true owner of the parcels on defendant's attempt to refinance the property subsequent to the conveyance to the garnishee. I cannot accept plaintiff's argument. In my view, the inference urged by Massey-Ferguson requires too great a leap from fact to conclusion. Certainly, defendant's action would be consistent with ownership of the properties, but that is not the only conclusion to be drawn under the circumstances of this case. It is equally plausible to conclude that the garnishee may have been willing to permit the refinancing of the properties to help her father out of a difficult situation and that defendant's inquiries were preliminary to that scheme. Moreover, and even more to the point, plaintiff has produced no other evidence that would be conclusive of or consistent with defendant's control over the properties. There is nothing in the record to show, for example, how the rental income from the properties is distributed or who bears responsibility for maintenance, improvements, assessments, and mortgage payments. In the absence of any such evidence, I am simply unable to conclude that the transfer was a sham.

### B. *A Fraudulent Conveyance*

Plaintiff's principal argument based on the Uniform Fraudulent Conveyance Act, 39 Pa.Stat.Ann. §§ 351–363 (Purdon 1954),

is considerably more compelling. Under the Act, a conveyance that is made without fair consideration and that renders the debtor insolvent is presumptively fraudulent as to creditors. *Id.* § 354. The garnishee argues that the Act is inapplicable here because (1) the properties subject to the writ of attachment were held by the Finocchiaros as tenants by the entireties, (2) properties so held may be reached only for the joint debts of a husband and wife, and (3) Marion Finocchiaro was not indebted to Massey-Ferguson at the time of the transfer to the garnishee. Massey-Ferguson counters by adverting to the Act's broad definitions of creditor and debt, which include, respectively, claims and legal liabilities that are unmatured and contingent. *Id.* § 351.[2] Plaintiff relies on Marion Finocchiaro's 1968 guaranty of FECO's obligations as the source of her contingent liability that triggers the interplay of the Act. *See* Plaintiff's Exhibit No. 3.

In her motion to quash the writ, the garnishee disputes the validity of the 1968 guaranty to the underlying debt and the existence of any contingent liability therefor in Marion Finocchiaro. The garnishee argues that the 1968 guaranty pertained to debts incurred by FECO, the sole proprietorship, and did not extend to the obligations of FECO, Inc., the corporation which superseded the sole proprietorship and with whom Massey-Ferguson had dealt since March 1971. She relies on the general principle of suretyship and guaranty law that a material change in the terms of the contract of guaranty, including a change in the principal debtor or obligor, releases the guarantor in the absence of an express assent to the change. *See, e. g., Teledyne Mid-America Corp. v. HOH Corp.,* 486 F.2d 987, 990–91 (9th Cir. 1973); *Sherman Car Wash Equipment Co. v. Maxwell,* 297 F.Supp. 712 (E.D.Pa.1969); *Magazine Digest Publishing Co. v. Shade,* 330 Pa. 487, 199 A. 190 (1938); A. Stearns, The Law of Suretyship § 78 (4th ed. 1934).

According to plaintiff, I may predicate the existence of a contingent debtor-creditor relationship between Marion Finocchiaro and Massey-Ferguson on any one of three grounds. First, plaintiff points to invoice # 014512, which is dated October 30, 1970, and shows a $1,200 balance due from FECO to Massey-Ferguson. *See* Plaintiff's Exhibit No. 2. This invoice, plaintiff contends, reflects a debt incurred by the sole proprietorship approximately five months before incorporation and thus clearly falls within the terms of the guaranty. I would agree with plaintiff that this invoice conclusively demonstrates a contingent liability on the part of Marion Finocchiaro under the broad terms of her guaranty for the outstanding balance stated thereon. I am, however, somewhat reluctant to set aside the conveyance of all four properties on the strength of this single invoice. I recognize that once a creditor has demonstrated a transfer by one who is in debt, the burden shifts to the transferee to demonstrate the solvency of the transferor and fair consideration. *E. g., First National Bank of Marietta v. Hoffines,* 429 Pa. 109, 114, 239 A.2d 458, 462 (1968); *Patterson v. Hopkins,* 247 Pa.Super. 163, 172, 371 A.2d 1378, 1382–83 (1977). Moreover, I find that the garnishee has failed to carry her burden in this regard.[3] Nevertheless, I think it

---

**2.** The definitions of "creditor" and "debt" set forth in this section of the Act virtually track each other:

" 'Creditor' is a person having any claim, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent. 'Debt' includes any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed, or contingent."

**3.** First, there is simply no evidence in this record that Marion Finocchiaro retained sufficient assets subsequent to the transfer to satisfy her potential obligation to Massey-Ferguson.

Second, there is conflicting evidence about the Finocchiaros' motive for the transfer. Finocchiaro testified on deposition and at the hearing that the conveyance was in consideration of his daughter's past, uncompensated services to his business. Plaintiff's Appendix in Support of Memorandum in Opposition to Garnishee's Motion (Doc. No. 60), Exhibit L. Marilyn Finocchiaro, on the other hand, testified both at deposition and at the hearing that she worked a

obvious that any one of these four parcels, whose total value has been placed at more than $200,000, would have been sufficient to satisfy a $1,200 debt. Accordingly, I hesitate to declare the conveyance of all four properties void on the basis of this one invoice.

Massey-Ferguson also suggests that the incorporation of the sole proprietorship did not extinguish Marion Finocchiaro's liability on the guaranty. Subsumed in this single assertion are plaintiff's two remaining theories of liability. Because these theories are distinct, I will address each in turn.

■ Plaintiff contends first that defendant's action in continuing to hold himself out as a sole proprietorship after the incorporation of the business sheds considerable doubt on defendant's assertion that the sole proprietorship ceased to exist when the corporation came into being. *See* Plaintiff's Exhibits Nos. 17, 22. Massey-Ferguson maintains that its 1970 distributorship agreement was not affected by the incorporation, characterizing the transfer of FECO's assets and liabilities to FECO, Inc., as a gratuitous undertaking to which Massey-Ferguson did not actually agree. To support its contention that it continued to deal with the sole proprietorship subsequent to incorporation and at least until the execution of a new set of documents in April of 1974, plaintiff directs my attention to a series of invoices with dates ranging from June of 1971 to May of 1974 and addressed to FECO rather than to FECO, Inc. *See* Plaintiff's Exhibits Nos. 2, 4.

I have considerable difficulty with this argument, for in my view, plaintiff attempts to prove too much from the invoices. The mere fact that the invoices are directed to FECO does not establish, either conclusively or even prima facie, that plaintiff was dealing with the sole proprietorship instead of the corporation. In the first place, plaintiff acknowledged in its complaint that it had notice of the incorporation and FECO, Inc.'s assumption of the assets and liabilities of the sole proprietorship in early 1971. Plaintiff's Exhibit No. 9 (Complaint ¶ 11).[4] Moreover, plaintiff entered into a dealership agreement with the corporation in March 1971. Plaintiff's Exhibit No. 6.

Plaintiff might have persuaded me that it dealt simultaneously with the sole proprietorship under the distributorship agreement and with the corporation under the dealership agreement if the invoices from 1970 to 1974, when the new documents were signed, reflected sales to both FECO and FECO, Inc., or if there had been some showing that the items invoiced fell, without exception, into the category of construction machinery (and thus clearly came within the distributorship agreement), as opposed to industrial machinery (which was the subject matter of the dealership agreement). *Compare* Plaintiff's Exhibit No. 5 *with* Plaintiff's Exhibit No. 6. There is, however, no such evidence in this record.

Finally, two additional facts highlight the inconsistency of plaintiff's argument and undercut its position. First, the new agreement executed in 1974, which Massey-Ferguson contends marks the beginning of its dealings with the corporation, was a dealership agreement, the same type of agreement that had been executed by Massey-Ferguson and the corporation in 1971. It is nothing short of incongruous to conclude, as Massey-Ferguson apparently suggests, that the 1971 agreement does not evidence Mas-

---

five- to six-hour day and received a salary of approximately $75 to $100 per week. *Id.*, Exhibit M. Both Mr. and Ms. Finocchiaro testified that it had always been understood between parents and daughter that Marilyn would receive the properties to help her "get started." *Id.*, Exhibits K, L. With the record in this posture, I conclude that the garnishee has demonstrated neither the solvency of the transferor nor fair consideration for the conveyance.

4. Plaintiff points out that defendant denied having so advised Massey-Ferguson in the answer to the complaint. Defendant's denial, however, merely created an issue of fact that plaintiff was required to prove at trial. It in no way vitiates the strength of plaintiff's assertion when, as here, that assertion is used against plaintiff to undermine its current contention that it did not undertake to deal with FECO, Inc., until 1974.

sey-Ferguson's intent to deal exclusively with the corporation while the 1974 agreement does. Second, the effective date of the new agreement was April 15, 1974. Yet even after this date, three invoices were directed to FECO rather than FECO, Inc. Plaintiff's Exhibit No. 4, Invoices ## 401819, 401820, 402402. Plaintiff does not attempt to explain these particular invoices, nor does it contend that they evidence sales to the sole proprietorship under the distributorship agreement, choosing instead to ignore their existence.

Under the circumstances, I cannot conclude that the invoices demonstrate Massey-Ferguson's intent to deal with the sole proprietorship rather than the corporation. Indeed, when gauged against other evidence in the record, the invoices evidence at best a laxity on the part of Massey-Ferguson which generates little sympathy for its now belated attempt to protect its interests.

■ Although I am hesitant to predicate the validity of the writ on either of the two grounds just discussed, I am nevertheless persuaded by plaintiff's third and final argument. This argument invokes an exception to the general rule that a change in the principal debtor or obligor automatically releases the guarantor. The exception derives from the holding of *D. N. & E. Walter & Co. v. Zuckerman*, 214 Cal. 418, 6 P.2d 251 (1931), wherein a guarantor of the obligations of a sole proprietorship was deemed liable for the debts of a subsequently formed alter ego corporation. Plaintiff urges that the liberality of the Pennsylvania courts in disregarding the corporate fiction "whenever justice and public policy demand", see, e. g., *Ashley v. Ashley*, 482 Pa. 228, 237, 393 A.2d 637, 641 (1978), countenances the application of the *Zuckerman* exception to these facts. I agree.

As in the *Zuckerman* case, FECO, Inc., was "distinctly a one-man corporation, . . . completely owned, dominated, and controlled by" Finocchiaro, as was FECO, the

predecessor enterprise. *Id.*, 6 P.2d at 252. This fact distinguishes the situation before me from the principal case on which the garnishee relies, *Teledyne Mid-America Corp. v. HOH Corp., supra,* 486 F.2d 987. Although the Ninth Circuit panel in *Teledyne* eschewed reliance on *Zuckerman,* the court noted that "after incorporation, . . . other investors acquired stock and the essential nature of the business enterprise changed . . . [with the infusion of] additional corporate capital for use in expanded operations." 486 F.2d at 990. Quite clearly, that is not the case here. Despite the change in the structure of the enterprise from sole proprietorship to corporation, the equipment company always remained completely identifiable with Finocchiaro.

Nor do I believe that disregarding the corporate fiction runs contra to the caveat of the Pennsylvania Supreme Court regarding prejudice to innocent parties. *See Ashley v. Ashley, supra,* 482 Pa. at 237, 393 A.2d at 641. I perceive no manifest injustice to Marion Finocchiaro [5] in holding that her guaranty extended to the debts of the corporation under the circumstances presented here. Defendant testified that one of the reasons for the incorporation was his wife's apprehension about the broadened scope of the business, which necessarily ensued from the assumption of the distributorship. Although I credit this assertion, I note that the distributorship was initially undertaken by the sole proprietorship, predating the formation of the corporation by some five months. Under the terms of her guaranty, which encompassed all obligations of FECO to Massey-Ferguson regardless of the manner in which the liability was created, Marion Finocchiaro was liable for those debts incurred by FECO under the distributorship agreement. *See* Plaintiff's Exhibit No. 3. If she desired to be released from liability for FECO's expanded operations, it was incumbent on

---

**5.** Here, Marion Finocchiaro, not the garnishee, is the innocent party because plaintiff is attacking Marion Finocchiaro's right to dispose of her property as she wished. If Marion Finocchiaro had no such right, then *a fortiori* the garnishee acquired no rights in the property, vis-a-vis Massey-Ferguson.

her to so advise Massey-Ferguson. *See id.* Because the sole proprietorship had already begun expanded operations, the incorporation of the equipment company did not materially change the nature of Finocchiaro's enterprise. Similarly, the simple expedient of incorporation did not automatically release Marion Finocchiaro from liability on her guaranty because the change in the nature of the business entity did not work a material change in the nature of her undertaking on the guaranty.

To the extent that the other cases cited by the garnishee counsel a different result, I decline to follow them. I am aware that the facts of *Wheeling Steel Corp. v. Neu,* 90 F.2d 139 (8th Cir. 1937), in which the Eighth Circuit failed to look beyond the formal change in the principal debtor as effecting a release of the guarantor, closely parallels the situation here. Nevertheless, I favor the approach adopted by the *Zuckerman* court over the highly technical result of the *Wheeling Steel* decision, which I believe elevates form over substance.

I also reject the rationale of *Sherman Car Wash Equipment Co. v. Maxwell, supra,* 297 F.Supp. 712, but for a different reason. Notwithstanding that court's approval of the *Wheeling Steel* decision, I do not find *Sherman Car Wash* persuasive here. The *Sherman Car Wash* court looked to the equities of the situation, including fraud by an officer of the creditor corporation in inducing the guaranty, to hold that the guaranty did not extend to debts owed by the principal obligor to a subsidiary of the creditor, which had been incorporated several months after the guaranty had been executed. *Id.* at 715–16. The court therefore released the guarantors from liability for those debts which the creditor corporation had obtained by assignment from its subsidiary more than a year after the guaranty had been executed. *Id.* The unique facts of the *Sherman Car Wash* case, which resemble neither the *Wheeling Steel* facts nor the situation presently before me, prompt my refusal to follow the lead of the *Sherman Car Wash* court in approving the *Wheeling Steel* approach.

## III. *CONCLUSION*

■ For the reasons outlined above, I conclude that Marion Finocchiaro's obligation on her guaranty was not extinguished by the incorporation of the equipment company, that Massey-Ferguson had a contingent claim against her on the guaranty for the unpaid debts of the corporation, and that the contingent liability existed at the time of the conveyance of the properties to the garnishee. Inasmuch as the garnishee has failed to adduce evidence that the debtor was solvent subsequent to the conveyance or that the properties were transferred for a fair consideration, *see* note 3 *supra* and accompanying text, I find that the conveyance of the properties was fraudulent as to Massey-Ferguson and is, therefore, void.

■■ Ordinarily, a creditor may not levy on the property of a contingent debtor. *See generally* 39 Pa.Stat.Ann. § 360 (Purdon 1954). In this instance, however, the levy may proceed because of the cumulative effect of a unique series of events. Because the Uniform Fraudulent Conveyance Act operates to void the conveyance nunc pro tunc, the properties were held by the Finocchiaros as tenants by the entireties prior to and until the death of Marion Finocchiaro. On the death of his wife, Anthony Finocchiaro succeeded to sole ownership of the properties by operation of law, and they may be attached to satisfy his individual debts. *See generally id.* § 359. Accordingly, I will enter an order denying the garnishee's motion to quash the writ of execution.

The foregoing opinion constitutes the findings of fact and conclusions of law required by Rule 52(a).