**AMERICAN HARDWARE SUPPLY, Appellee,**

**v.**

**ALAN SUPPLY, Inc. et al., Appellants.**

[Cite as *American Hardware Supply v. Alan Supply, Inc.* (1989), 63 Ohio App.3d 838.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–688.

Decided Aug. 24, 1989.

*Luper, Wolinetz, Sheriff & Neidenthal* and *Nodine Miller,* for appellee.

*Crabbe, Brown, Jones, Potts & Schmidt, Richard D. Wetzel, Jr., Robert C. Buchbinder* and *Theodore F. Claypoole,* for appellants.

BOWMAN, Judge.

Prior to December 13, 1977, defendant-appellant, Alan J. Firestone, and E.J. Rettig formed a company called Alan Supply Company, d.b.a. Factory Surplus Outlet. Prior to December 13, 1977, Alan Supply Co., d.b.a. Factory Surplus Outlet, applied for membership with plaintiff-appellee, American Hardware Supply Company ("American"). The membership was accepted and a written agreement was executed on December 13, 1977. The membership entitled Factory Surplus Outlet to purchase merchandise from American Hardware Supply.

In November 1977, Alan J. Firestone and E.J. Rettig executed a guaranty agreement for a line of credit with American Hardware Supply, whereby they agreed to be individually liable to pay the accounts which Factory Surplus Outlet failed to pay. The guaranty agreement expressly stated that Rettig or Firestone could terminate the guaranty by written notice to American.

In 1979, a corporation was formed in the name of Alan Supply, Inc. and its sole shareholder was Alan J. Firestone. Alan Supply, Inc. submitted a new "Retailer's Application for Membership" to American Hardware Supply. The new written agreement is dated October 20, 1979 and states Alan Supply, Inc. as the name of the applicant. The following was handwritten on the application: "Name Change 11/8/79." There is no evidence as to who was responsible for this notation on the application. A new guaranty agreement was not requested or executed in conjunction with the new membership application, nor was the old guaranty agreement terminated.

On February 3, 1986, American Hardware Supply ("American") filed a complaint against Alan Supply, Inc. and Alan J. Firestone, sole shareholder and officer, for $13,943.29 owed for goods sold to Alan Supply, Inc. American also alleged that Firestone was personally liable on the basis of the guaranty signed while he and Rettig were doing business as Factory Surplus Outlet. E.J. Rettig was not named as a defendant.

A trial was conducted in the Franklin County Court of Common Pleas and judgment was rendered in favor of American. The trial court found that Firestone was personally liable on the debt incurred by Alan Supply, Inc. as a result of the personal guaranty he signed as guarantor for the line of credit issued to Factory Surplus Outlet. Appellants have appealed raising the following assignments of error:

"1. The trial court erred in overruling defendant's motion for summary judgment on November 23, 1987.

"2. The trial court erred in its decision of March, 1988 by misinterpreting the law and effectively piercing the corporate veil."

Addressing the second assignment of error first, appellants assert that the trial court erred in holding Alan J. Firestone personally liable for the debts of the corporation.

The trial court held that the personal guaranty of an account for a business will remain effective even though that business changes in form, unless the guarantor specifically notifies the company relying on the guaranty that the change has taken place. In its findings of facts, the court found that there was no evidence that notice was sent to American advising it of the change in business structure from a partnership to a corporation. Thus, the court

concluded that Alan J. Firestone, personal guarantor of Factory Surplus Outlet, was also personally liable for the debts of Alan Supply, Inc. because Firestone did not notify American of the change in business form. In reaching its conclusions, the trial court relied primarily on *G.F. Business Equip., Inc. v. Liston* (1982), 7 Ohio App.3d 223, 7 OBR 285, 454 N.E.2d 1358, and *Massey–Ferguson, Inc. v. Finocchiaro Equip. Co.* (E.D.Penn.1980), 496 F.Supp. 655, affirmed (C.A.3, 1981), 649 F.2d 859.

This court held in *G.F. Business Equip., Inc., supra,* that a guarantor is bound only by the precise words of his contract and other words cannot be added by construction or implication. Here, the guaranty provided:

"In consideration of One Dollar ($1.00) paid to me by AMERICAN and of AMERICAN extending a line of credit to FACTORY SURPLUS OUTLET, FINDLAY, OHIO for goods, wares, and merchandise purchased and hereafter to be purchased from AMERICAN from time to time by FACTORY SUR-PLUS OUTLET we do hereby contract and agree and guarantee that we, Mr. & Mrs. A.J. Firestone & Mr. & Mrs. E.J. Rettig will pay said accounts which FACTORY SURPLUS OUTLET fails to pay on or before the due date of each invoice and account."

The contract for guaranty was clearly on behalf of Factory Surplus Outlet. It did not cover the purchase of goods purchased by Alan Supply, Inc., which was a separate and distinct legal entity organized months after the guaranty was executed. Thus, *G.F. Business Equip., Inc.* would support a result in favor of appellants. However, the trial court disregarded the principle of strict construction and relied on *G.F. Business Equip., Inc.* to support its theory of a continuing surviving guaranty.

*G.F. Business Equip., Inc.* did not involve a change in business form; instead, the issue was whether a guaranty had an unlimited duration between the original parties or whether the guaranty was limited in its duration and application to certain specific purchases. This court held that, by the clear, precise language of the contract, the guaranty was not limited to initial large purchases and was intended to cover periodic purchases over a prolonged period. In that more narrow context, there was a continuing guaranty. Nevertheless, that case does not have an application to the facts of this case, especially when considering the language mandating a strict construction.

In *Massey–Ferguson, supra,* a husband and wife signed as personal guar-antors for the debts of a sole proprietorship. Thereafter, the assets of the sole proprietorship were transferred to a newly formed corporation of which the husband was president and sole shareholder. Massey–Ferguson, the plaintiff, brought the action to hold the wife liable for the debts of the defendant corporation based on the guaranty she executed on behalf of the

sole proprietorship, and to set aside a conveyance of property to the guarantor's daughter made after judgment was entered against them.

*Massey–Ferguson* does provide some support for the theory that a personal guaranty can survive the change in company form. Massey–Ferguson argued that, after changing in form from sole proprietorship to a corporation, the defendant continued to hold itself out to Massey–Ferguson as a sole proprietorship. Massey–Ferguson argued that the personal guaranty survived because it did not agree to the change in corporate form and that without notice of the change in form, it continued to deal with the sole proprietorship.

The court, in *Massey–Ferguson*, specifically rejected plaintiff's argument, however, because the lack of notice alleged by Massey–Ferguson was not substantiated by the facts. The court held that Massey–Ferguson, in its complaint, acknowledged notice of the corporation and its assumption of the assets and liabilities of the sole proprietorship. Additionally, the sales agreement between the parties demonstrated Massey–Ferguson's attempt to deal with the corporation. Finally, the court found that the fact that Massey–Ferguson sent invoices to the sole proprietorship after the incorporation was laxity on the company's part which generated little sympathy in its belated attempt to protect its interests. Thus, although the court in *Massey–Ferguson* did hold the wife liable, it did so by piercing the corporate veil, an alternative theory addressed hereinafter, and not by holding that the guaranty survived due to lack of notice of the change in business form.

We are not precluding the possibility that a situation may arise in which the theory applied by the trial court in this case and considered in the *Massey–Ferguson* case may be a proper result. However, *G.F. Business Equip., Inc.* does not support such a result and neither do the facts of this case.

After Alan Supply, Inc. was formed, Alan J. Firestone, its president and sole shareholder, submitted a new "Retailer's Application For Membership" to American. The credit administrator for American testified at trial that the membership department and billing department would have had copies of that application. Furthermore, plaintiff's Exhibit 1, an invoice evidencing the total due in this case, is addressed to Alan Supply, Inc., not Alan Supply Co., d.b.a. Factory Surplus Outlet, or to Factory Surplus Outlet, or to Alan Firestone. The first application on which liability was based was from Alan Supply Co., d.b.a. Factory Surplus Outlet. The second was from Alan Supply, Inc. The language of the guaranty was clearly for the benefit of Factory Surplus Outlet. None of the amounts due is attributed to Factory Surplus Outlet. Thus, the names have enough dissimilarity that confusion in this regard cannot constitute lack of notice. Further, American had to have been aware of the change as its invoices were properly directed to Alan Supply, Inc.

From these facts, the only reasonable conclusion is that American did have notice of the change in company form. The trial court's finding that American did not have notice in the change of company form is not supported by any credible evidence and is therefore against the manifest weight of the evidence. See *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. As a result, there is no basis to find that Firestone is personally liable on the theory of a continuing guaranty which survived the change in business form. Such a result could only be proper when the plaintiff continued to be unaware of the company with which it was actually dealing.

Appellants have contended that the trial court, in effect, pierced the corporate veil and placed liability with the sole shareholder of Alan Supply, Inc., who was a guarantor of Factory Surplus Outlet. Although in its decision the trial court rejected that contention, the trial court relied on *Massey–Ferguson, supra*, which held the guarantor liable by disregarding the corporate fiction as being merely the alter ego of its creator. Applying Pennsylvania law, the court in *Massey–Ferguson* found that the change to corporate form did not release the guarantor from liability on the guaranty because the change in the nature of the business did not materially change the nature of the undertaking on the guaranty. In reaching its conclusion, the court in *Massey–Ferguson* relied heavily on the case of *D.N. & E. Walter & Co. v. Zuckerman* (1932), 214 Cal. 418, 6 P.2d 251. In *Zuckerman*, the name remained exactly the same after the incorporation and, while the court found that the plaintiff had at least constructive notice of the change, it continued to rely on the guaranty of the individual. Applying California law, that court found that the corporation was the alter ego of the defendant and was necessarily included within the terms of the guaranty.

In deciding whether to disregard the corporate fiction, this court has followed the following guidelines set forth in *Bucyrus–Erie Co. v. General Products Corp.* (C.A.6, 1981), 643 F.2d 413, at 418;

" * * * [T]he corporate fiction should be disregarded when: (1) domination and control over the corporation by those to be held liable is so complete that the corporation has no separate mind, will, or existence of its own; (2) that domination and control was used to commit fraud or wrong or other dishonest or unjust act, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong. * * * " See, also, *J.B. Stoves, Inc. v. White Castle System, Inc.* (Jan. 28, 1986), Franklin App. No. 84AP–446, unreported, 1986 WL 1282.

In almost every case of a closely held or solely owned corporation, the first prong of the test will generally be present. However, to satisfy the second

prong, there must be a demonstration that the domination and control of the corporation was used to commit fraud. See *J.B. Stoves, Inc., supra.* There has been no claim in this case that the control of the corporation was used for a wrongful or dishonest purpose. The loss caused to plaintiff was not the result of a wrongful act by the defendant but, rather, the failure of the plaintiff to act prudently and timely in securing a personal guaranty in favor of the newly formed corporation of which it had notice. There is no basis for disregarding the corporate fiction in this case.

The facts presented here are very similar to those in *Wheeling Steel Corp. v. Neu* (C.A.2, 1937), 90 F.2d 139. In that case, the defendant, as a sole proprietorship, began doing business with plaintiff and signed a personal guaranty for that company's debts. Later, the defendant incorporated his business, made himself president and principal shareholder, and kept the same company name. Plaintiff knew of the incorporation but continued to deal with the defendant in the same way. The court in *Wheeling* found that the defendant was not individually liable and stated:

"The contract of guaranty in suit is clear, complete, and unambiguous. It covered the purchase price of goods sold and delivered by plaintiff to Joseph Himmelspach, doing business under the trade name 'J. Himmelspach Supply Company.' It did not cover the purchase price of goods sold by the plaintiff to a corporation, a separate and distinct legal entity organized months after the guaranty was executed. * * * " *Id.* at 140.

We recognize that the court in *Massey–Ferguson* explicitly rejected the *Wheeling* decision for placing form over substance. However, given the facts of this case, the strict construction by which this state interprets guaranty contracts and the lack of any reason to disregard the corporate entity, we find the *Wheeling* decision presents the better approach in this case. Firestone guaranteed the debts of Factory Surplus Outlet. While that contract was never terminated, its language cannot be extended to cover the debts of a separate legal entity. Firestone is not personally liable for the debts of Alan Supply, Inc.

Appellants' second assignment of error is well taken.

Given our disposition of appellants' second assignment of error, appellants' first assignment of error is not well taken as no prejudice can be demonstrated by the denial of summary judgment.

Therefore, appellants' first assignment of error is overruled and the second assignment of error is sustained. The judgment of the trial court is reversed, and this cause is remanded with instructions to enter judgment in favor of

defendant Alan J. Firestone.  The judgment is affirmed as to Alan Supply, Inc.

*Judgment reversed in part,
affirmed in part and cause
remanded with instructions.*

JOHN C. YOUNG and PEGGY BRYANT, JJ., concur.